1           IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND
2               NORTHERN DIVISION

3    UNITED STATES OF AMERICA, )
                            )
4            vs.            )   CRIMINAL CASE NO.
                            )   1:21-CR-00494-JRR-1
5    DAQUANTE THOMAS,       )   Baltimore, Maryland
     Defendant.             )   11:11 a.m.
6    _____ )

7            WEDNESDAY, JANUARY 11, 2023
                  Courtroom 3A
8
             TRANSCRIPT OF PROCEEDINGS
9                  SENTENCING
        BEFORE THE HONORABLE JULIE R. RUBIN
10
     For the Government:
11
     Kim Y. Oldham, Esquire
12    US Attorney's Office
      36 South Charles Street
13    Baltimore, MD 21201

14   For the Defendant:

15   Christopher Madiou, Esquire
      6305 Ivy Lane, Suite 700
16    Greenbelt, MD 20770

17   Gary E. Proctor, Esquire
     Jennifer Smith, Esquire
18    8 East Mulberry Street
      Baltimore, MD 21202
19
     Also Present:
20
     Joshua Futter, ATF
21

22   _____

           (Computer-aided Transcription of Stenotype Notes)
23
           Reported by:  Amanda L. Longmore, RPR
24            Federal Official Court Reporter
           101 W. Lombard Street, 4th Floor
25            Baltimore, Maryland  21201
                  410-962-4474

P R O C E E D I N G S

THE COURT:  Have a seat.  Make yourselves at home.
If you are fully vaccinated and addressing the Court, you may
remove your mask.  If you are not fully vaccinated, no matter
what you may not remove your mask.  Please call the case.
Thank you.

MS. OLDHAM:  Good morning, Your Honor.  Kim Oldham on
behalf of the Government calling United States versus Daquante
Thomas, Case Number JRR-21-494.  With me, Your Honor, is Agent
Joshua Futter with the ATF.  We are here for sentencing this
morning.

THE COURT:  Good morning.

MR. MADIOU:  Good morning, Your Honor.  Christopher
Madiou.  Sorry about that.  Christopher Madiou on behalf of
Daquante Thomas who's standing to my left, along with my
co-counsel is Gary Proctor and Jennifer Smith.

THE COURT:  Good morning, counsel.  Good morning,
Mr. Thomas.  Counsel, can you briefly approach for a moment?

MR. MADIOU:  Certainly.

(The following discussion occurred at sidebar:)

THE COURT:  So tell me how you want to do this in
terms of victim impact.  I want to be sure that Mr. Thomas is
given time to allocute after he hears everything.  So I mean,
typically if there's any sort of back and forth and I've

1   already given Mr. Thomas a chance to speak, I will give him a

2   chance to speak again.  Because I'm a big -- that's a thing

3   with me.

4           MR. MADIOU:  Great.

5           THE COURT:  So tell me what's going to happen in

6   terms of victim impact stuff.

7           MS. OLDHAM:  Your Honor, my intention is to have

8   Mr. Ross's mother, Sherice Taylor, give her victim impact

9   statement at the conclusion of the Government's remarks, and

10  then I would submit.

11          THE COURT:  Okay.  And I have read everything,

12  letters that were submitted, both for the victim as well as

13  Mr. Thomas that I'll make reference to.  In terms of the

14  restitution piece --

15          MS. OLDHAM:  I addressed that with Ms. Taylor last

16  year, actually, and she indicated that there was no restitution

17  issue as far as funeral costs.

18          THE COURT:  Okay.  I think it's mandatory in this

19  instance, is it not?

20          MS. OLDHAM:  She -- I don't think she incurred any

21  costs, from my recollection of the conversation.

22          THE COURT:  Sure.  If there are no costs, that could

23  just be mentioned and left off.

24          MS. OLDHAM:  Sure.

25          THE COURT:  Okay.  I'm just not familiar with

01/11/2023 Sentencing

1    mandatory restitution.

2              MR. MADIOU:  I mean, I would agree, if the

3    Government's not seeking it, I don't think there's an issue.

4              THE COURT:  Any oddities I need to know about?  I

5    know there are a lot of people here.

6              MS. OLDHAM:  Ms. Taylor did bring with her a large --

7              THE COURT:  Yes, I'm aware.  And what I would say is

8    while the Government is doing its presentation, I would say to

9    wait until the victim impact.

10             MS. OLDHAM:  Yes.

11             THE COURT:  Because -- and I'm not saying this to be

12   disrespectful, but it might distract my attention.

13             MS. OLDHAM:  Yes.

14             THE COURT:  And if the defense wishes to have it

15   taken down.

16             MR. MADIOU:  Please.

17             THE COURT:  So maybe when she's finished reciting her

18   piece, take it down just out of respect for Mr. Thomas's piece

19   of the puzzle.

20             MS. OLDHAM:  Yes.  And perhaps either myself or

21   someone from my office can just fold it and take it.

22             THE COURT:  That's fine.  Yes.

23             MS. OLDHAM:  Okay.

24             MR. MADIOU:  Thank you.

25             THE COURT:  My pleasure.

01/11/2023 Sentencing

1       (End of sidebar discussion.)

2           THE COURT:  Thank you, counsel.  All right.  And to

3   be clear, Mr. Madiou, there is no need for an interpreter in

4   this matter, correct?

5           MR. MADIOU:  No, Your Honor, there's not.

6           THE COURT:  Okay.  Is everybody prepared to proceed?

7   Is the Government prepared to proceed?

8           MS. OLDHAM:  Yes, Your Honor.

9           THE COURT:  Is the defense?

10          MR. MADIOU:  Yes, we are, Your Honor.

11          THE COURT:  All right.  Thank you.  Please do have a

12  seat.

13      On Monday, June 9th, 2022, I believe it was, the defendant

14  appeared before this court but not this judge, Judge Blake it

15  was, and pled guilty to Count 5 of the indictment charging him

16  with use and discharge of a firearm during a crime of violence

17  resulting in death in violation of 18 U.S.C. 924.

18      Upon a finding of guilt, the Court issued a preparation of

19  a presentence report and sentencing was scheduled for today.

20  This is, of course, a Class A felony with a mandatory 10-year

21  minimum to life imprisonment and a $250,000 fine, supervised

22  release up to five years pursuant to the statute.

23      Mr. Thomas was originally charged in State District Court

24  in Howard County and has been detained due to this event I

25  believe since November 19, 2020; is that correct?

1          MS. OLDHAM:  Yes, Your Honor.

2          MR. MADIOU:  Yes, Your Honor.

3          THE COURT:  That's correct.  All right.  I have

4     reviewed everything.  I know, counsel, I made mention of it

5     when you were up here but just for the record and for the

6     benefit of those who are here on behalf of Mr. Thomas, as well

7     as Mr. Ross, I have read the plea agreement, the presentence

8     report, defense counsel's mitigation memorandum including the

9     supplement, as well as the exhibits including notably

10    Dr. O'Connell's report as well as the letters in support of

11    Mr. Thomas.  I have also of course read the Government's

12    sentencing memorandum and all of the victim impact letters.

13         Is there anything that I should have received and I have

14    not mentioned?

15         MS. OLDHAM:  Not from the Government, Your Honor.

16         MR. MADIOU:  No, Your Honor.

17         THE COURT:  All right.  Thank you.  Everyone's ready

18    to proceed.  Mr. Thomas, I'm going to ask you to stand.  I am

19    going to ask you to be sworn in since I'm going to be asking

20    you a couple questions and you'll be given a chance to speak so

21    at this time it does make sense to do that, okay?

22         THE DEFENDANT:  Yes, ma'am.

23       (The defendant was duly sworn.)

24         THE CLERK:  Can you state your full name?

25         THE DEFENDANT:  Daquante Thomas.

1    THE COURT:  All right.  Thank you.  You can have a

2    seat.  Mr. Thomas, I'm going to address you a few times, but

3    you're welcome to stay seated while I address you, okay?

4    THE DEFENDANT:  Okay.

5    THE COURT:  Now, I know you gave a long, lengthy

6    interview and we've called it the Presentence Investigation

7    Report.  Do you know what I'm talking about?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Okay.  And have you had an opportunity to

10   go over it with your attorneys?

11   THE DEFENDANT:  Yes.

12   THE COURT:  And has any question that you've had

13   about its contents been answered to your satisfaction?

14   THE DEFENDANT:  Yes.

15   THE COURT:  And counsel, I know in the mitigation

16   memo you said you didn't have any objection to it.  Is that

17   still the case?

18   MR. MADIOU:  It is, Your Honor.

19   THE COURT:  All right.  Does the Government take

20   issue with anything in the PSR?

21   MS. OLDHAM:  No, Your Honor.  Thank you.

22   THE COURT:  And I know, Mr. Thomas, you submitted to

23   a report or an investigation, I suppose it's more of an

24   evaluation, with Dr. O'Connell that was voluntary; is that

25   correct?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.  All right.  Obviously there is a

3     rather significant dispute as to the appropriate term of

4     imprisonment in this case.  I'm just going to lay out what I

5     think is the backdrop to this and I'm going to hear from both

6     the Government and counsel for Mr. Thomas.  The Government's

7     position is that the sentence imposed should be I believe 480

8     months, is that correct, 40 years?

9           MS. OLDHAM:  Yes, Your Honor.

10          THE COURT:  And the defense's position is that the

11    sentence imposed should be somewhere between 240 and 300

12    months; is that correct?

13          MR. MADIOU:  That is our position.  Thank you.

14          THE COURT:  Okay.  It looks like there is no issue as

15    to restitution.  I'll hit that when we get there.  But I

16    understand that the Government is not seeking any order of

17    restitution?

18          MS. OLDHAM:  That's correct, Your Honor.

19          THE COURT:  Okay.  Are there any particular issues in

20    dispute before we proceed on the sentencing?

21          MS. OLDHAM:  I don't believe so, Your Honor.

22          MR. MADIOU:  No, Your Honor.

23          THE COURT:  All right.  With respect to the

24    guidelines computation, I'm taking this mostly from the

25    computation of the plea agreement and the PSR.  I believe there

1    is no objection so I'm just going to run through what the
2    guidelines calculation is.  This is a base offense level of 43
3    pursuant to the guideline at 2A1.1(a).  Mr. Thomas, you are
4    entitled to a two-level reduction in that point calculation for
5    acceptance of responsibility and I do understand that the
6    Government does or was planning to make a motion for an
7    additional one-level reduction in recognition of the prompt
8    notification of Mr. Thomas's intent to plead.
9             MS. OLDHAM:  Yes, Your Honor.
10            THE COURT:  Okay.  And that is acceptable to the
11   Court, which means the final offense level is 40 following
12   those calculations.
13        With respect, Mr. Thomas, to your criminal history, there
14   are six criminal history points here which places Mr. Thomas in
15   a criminal history category of III, and that means that the
16   advisory guidelines range for this case is 360 months to life
17   incarceration.
18        Is there anything I've said that is not correct?
19            MS. OLDHAM:  No, Your Honor.
20            MR. MADIOU:  No, Your Honor.
21            THE COURT:  Okay.  All right.  At this point in time,
22   we do need to seal the record so we do need to clear the
23   courtroom of anyone who is not --
24            MR. PROCTOR:  Your Honor, rather than clear the
25   courtroom, could we just do it at the bench?

```
 1          THE COURT:  That's fine.

 2          MR. PROCTOR:  Do we have headphones for my client?

 3          THE COURT:  Please approach.

 4       (Conference at the bench.  It is the policy of this Court

 5    that every guilty plea and sentencing proceeding include a

 6    bench conference concerning whether the defendant is or is not

 7    cooperating.)

 8          THE COURT:  I'm just confirming with Ms. Oldham, is

 9    there a forfeiture order?

10          MS. OLDHAM:  No, Your Honor.

11          THE COURT:  Okay.  There will be of course the

12    mandatory special assessment of $100 in this case.  I'm just

13    going to cut to the chase on the financial aspects.  With

14    respect to the fine, I'm satisfied that Mr. Thomas has no

15    assets and really no anticipation of having any assets, and so

16    the Court is not going to order that a fine be paid in this

17    case.  As I said earlier, there is no issue of restitution

18    because the Government is not seeking it.

19       All right.  Ms. Oldham, would you like to be heard on

20    behalf of the Government?

21          MS. OLDHAM:  Yes, Your Honor.  Thank you.

22       Your Honor, as you indicated, Mr. Thomas was here

23    previously and entered a guilty plea to Count 5 of the federal

24    indictment which charged him with use and discharge of a

25    firearm during a crime of violence resulting in the death of
```

1    Juan Ross.  Your Honor, the Government agrees with the
2    calculation that has been calculated by the US Probation Office
3    where his guidelines for Mr. Thomas are 360 months or 30 years
4    to life.  That's as a result of his total offense level being
5    40 and his criminal history category being a III.

6         Your Honor, the Government's recommendation of 40 years or
7    480 months is a sentence that is within the advisory guidelines
8    range and it is a sentence that is sufficient but not greater
9    than necessary to achieve the goals of sentencing, Your Honor,
10   specifically to reflect the seriousness of the offense which in
11   this case involved a premeditated murder, to provide a
12   punishment that is just, to deter criminal activity that has
13   had in this case, Your Honor, such a devastating impact, and to
14   protect the public from further crimes of the defendant.  Your
15   Honor, those are just highlighting the goals of sentencing for
16   the Court to consider, and the Government's position is that
17   taking into account those goals of sentencing and the factors
18   outlined in 18 U.S.C. 3553(a), the Government's recommendation
19   of 40 years or 480 months is appropriate in this case.

20        First, Your Honor, the nature and circumstances of the
21   offense.  I'm not going to repeat everything that's in the
22   Government's sentencing memorandum, but I certainly would like
23   to highlight a few points for the Court, Your Honor.

24        THE COURT:  That's fine.

25        MS. OLDHAM:  Your Honor, Juan Ross was just 23 years

1  old when he was murdered.  On October 4th, 2020, he was hanging

2  out with friends in an area where he loved to hang out in

3  Columbia, Maryland.  He was in a parking lot of an apartment

4  complex standing on the sidewalk talking with friends.  He at

5  that moment had his whole life ahead of him, given that he was

6  only 23 years old.  He had a girlfriend.  He had a very loving

7  mother whom he had a very wonderful relationship with, and at

8  the appropriate time I will ask his mother Ms. Sherice Taylor

9  to give her victim impact statement.  She is here in the

10  courtroom this morning.

11      So one minute he is standing on the sidewalk, middle of

12  the afternoon in Columbia and the next minute he is literally

13  gunned down by two individuals, two weapons, two assailants,

14  one of whom was the defendant Daquante Thomas.

15      As outlined in the Government's sentencing memorandum, ECF

16  82, the cell phone location data for Mr. Thomas and a

17  coconspirator showed them traveling through this area well

18  before the murder, at least an hour before and staying in that

19  immediate area for some time.  Mr. Thomas and his coconspirator

20  during that time, Your Honor, were looking for Mr. Ross.  They

21  were hunting for him and what they did, those actions, it's the

22  definition of premeditation.  It's just classic lying in wait

23  for Mr. Ross.

24      The Government can establish that the planning for this

25  crime for the murder-for-hire of Mr. Ross started even well

1   before that.  The day before, on October 3rd, one of

2   Mr. Thomas's coconspirators, the Government can establish was

3   Mr. Braxton, sent the address to Mr. Thomas via text message of

4   where Mr. Ross could be found.  And in that same text message,

5   the coconspirator wrote, "He's trying to get it done ASAP,"

6   meaning the solicitor wants this murder committed as soon as

7   possible.  And in order to get paid because this was a

8   murder-for-hire, Mr. Thomas and his coconspirator, shooter

9   number two, had to ensure that the job was complete and that

10  Mr. Ross was killed.  So for that reason, when they approached

11  Mr. Ross, they fired their weapons at his head.  He was shot

12  eight times and six of those times were to his head, two of

13  those times were to the back.  Mr. Thomas and shooter number

14  two then fled the scene in the suspect vehicle which was the

15  Honda Crosstour owned by Mr. Thomas's girlfriend.  And then the

16  next day, he texted her, Mr. Thomas texted his girlfriend that

17  he was taking the car to a car wash to get it cleaned.

18       Your Honor, in the Government's sentencing memorandum that

19  was filed I believe on December 28th of 2022, the Government

20  advised the Court that neither murder weapon from this crime

21  had been recovered.  I learned from ATF that on December 28th

22  of 2022, one of the weapons was recovered from Baltimore City

23  during a stop of a vehicle that had been taken during an armed

24  carjacking.  The weapon that was recovered was a Smith and

25  Wesson .40 caliber.

1       Your Honor, regarding taking into consideration imposing a

2   sentence that is just in this particular case and a sentence

3   that reflects the seriousness of this offense, the defense's

4   recommendation of a sentence of 20 to 25 years in a

5   premeditated murder-for-hire execution-style crime is not just.

6       Regarding the history and characteristics of the

7   defendant, it's clear from Mr. Thomas's criminal history from

8   the contents of his cell phone that was seized in this case and

9   his involvement in this crime that he has a penchant for

10  firearms, for trading them, for selling them, for carrying

11  them, and clearly he's willing to use one during the commission

12  of the most violent type of crime, while he was already on

13  probation for a firearm offense, which means he had a period of

14  incarceration hanging over his head when he decided to

15  participate in this murder-for-hire conspiracy.  That jail time

16  that was hanging over his head was of no consequence to him.

17  It didn't matter.  He went right back to what thrilled him when

18  he was placed on probation, guns.  He refers to himself as

19  Glock or Mr. Glock.

20      Your Honor, I have reviewed the report that was prepared

21  by the defense forensic psychiatric, Dr. Michael O'Connell, and

22  I noted that on Page 14 of that report Dr. O'Connell states in

23  the second paragraph, "While I am not aware of the details of

24  the offense" -- which is an important factor to consider in

25  light of the conclusions that Dr. O'Connell reaches -- "While I

1   am not aware of the details of the offense, feeling on edge and
2   being quick to feel threatened could have placed him at risk to
3   act in an overly aggressive fashion are Dr. O'Connell's
4   comments about Mr. Thomas, citing ADHD, citing marijuana usage,
5   citing low self-esteem in support of his observations and
6   conclusions.  These are hardly compelling conditions that would
7   justify a sentence that is so much lower than the advisory
8   guidelines range.
9        I would note, Your Honor, that after committing the murder
10  of Mr. Ross, the investigation shows that life just went on for
11  Mr. Thomas.  There was no emotional or mental breakdown or wave
12  of regret that the Government has been able to see in his
13  post-crime behavior.  He just went back to buying and selling
14  and swapping and trading guns with other people right after.
15  It's actually pretty cold-hearted.
16        There were some of the text messages from his phone that
17  the Government included in its sentencing memorandum in the
18  weeks after the murder of Juan Ross where pictures are being
19  sent back and forth between he and someone saved in his phone
20  as Nick, and the text messages began on October 21st, 2020.
21  And in addition to the text messages, Your Honor, that -- just
22  the highlights that I included in the Government's sentencing
23  memorandum, ECF 82, I didn't include the entire duration but it
24  goes on from October 21st talking about trading these guns and
25  they trade pictures of them to November 18th, 2020, where the

1   same individual Nick writes to Mr. Thomas:

2       I was trying to see who got something for sale.  I'm

3   trying to grab it.  And Mr. Thomas replies, I am too, bitch

4   tryna' trade a 40.  And Nick responds, what kind of 40.  And

5   Mr. Thomas replies, Smith and Wesson.  Nick responds, let me

6   buy it, and Mr. Thomas says 800.  Nick replies, not paying no

7   eight for no Smith and Wesson 40.  And Mr. Thomas says, but you

8   will pay eight for a Glock you dumb Smith and Wesson more

9   accuracies, you don't know better.  And then later Mr. Thomas

10  writes, I'm going to show you this 40 better than a Glock, when

11  you get a Glock I'm burning you.

12      And again, Mr. Ross's murder was on October 4th, 2020, and

13  these conversations begin on October 21st through the following

14  month.  This is not somebody who felt threatened on the

15  afternoon of October 4th and acted overly aggressive because he

16  was feeling on edge or suffering from low self-esteem.  This

17  was a crime that was planned for some time, Your Honor.  It had

18  to be, because not only did they have to locate Mr. Ross in

19  that neighborhood but there had to be somebody that could point

20  Mr. Ross out, somebody who was familiar with the area, somebody

21  who knew Mr. Ross.  And as detailed in the Government's

22  sentencing memorandum, that person who did that also needed a

23  way to get out of the area before the murder occurred.

24      So after that initial casing of the neighborhood, the

25  logical inference is that Mr. Ross was spotted, he was pointed

1  out to the shooters, and then that vehicle was driven to a

2  nearby grocery store, a Walgreens, where the coconspirator who

3  pointed out Mr. Ross purchased an Uber card, and got the heck

4  out of the area so that Mr. Thomas and shooter number two go

5  back to that parking lot and finish the deal.

6       Lastly, Your Honor, the need to protect the public and the

7  need for deterrence.  There is a compelling need in this type

8  of case more than any other case, a murder-for-hire

9  premeditated for pecuniary gain, there is a compelling need for

10  all of the reasons that the Government cited a 40-year sentence

11  is sufficient but not greater than necessary to achieve the

12  goals of sentencing, Your Honor.

13       Lastly, despite what the Government has presented here,

14  Your Honor, none of my words can accurately explain and

15  describe the significance of the impact of this crime on the

16  community but in particular upon Mr. Ross's mother.  So at this

17  time, with the Court's permission, I would ask Ms. Sherice

18  Taylor to step forward to provide her victim impact statement

19  to the Court.  And if I can or if Mr. Birch from my office

20  could just step up with her and hold the picture up for the

21  Court.

22            THE COURT:  That would be fine.  That would be fine.

23       Ms. Taylor, take your time.

24            MS. TAYLOR:  This is my son right here.  This is Juan

25  Ross.  He's loved by many.  I'm not only his mother, I'm his

1   friend.  So before I begin, I want to thank my family for being

2   here for support as I do something that's really hard for me,

3   profoundly.  This is absolutely the next hardest thing for me

4   is do is to write about how this has affected me, his sister,

5   his close friends, his brother, his girlfriend, and his family

6   on his father's side.

7       You decided to pull the trigger to murder my son.  My life

8   is changed and the possibilities that we will never experience,

9   the sadness in our hearts.  You've taken away the

10  responsibilities and possibilities of what he intended to be.

11  He intended to be an uncle, he intended to be a father, he

12  intended to be a husband, and all that is wiped away.

13      I pray to God that you can turn around and tell your

14  mother that you're sorry and explain to her why you chose to

15  pull the trigger to murder my son.  I pray to God that He shows

16  you mercy and I pray that He shows you Grace.

17      But as for me, I forgive you.  I'm just praying that your

18  mother and the rest of your family can, because the rest of my

19  family doesn't but in my heart I can forgive you.  I just hope

20  you can forgive yourself because you've taken away somebody who

21  had many possibilities in this world.  And he not only was my

22  son.  He's a nephew.  He's a cousin.  He has a large family

23  that loves him.  So that's what I'm going to ask you to do for

24  me.

25      And this is him.  And this is him.  Thank you.

01/11/2023 Sentencing

1          THE COURT:   Thank you, Ms. Taylor.

2          MS. OLDHAM:   With that, Your Honor, the Government

3    would submit.

4          THE COURT:   Thank you very much.   Does the defense

5    wish to be heard in mitigation?

6          MR. MADIOU:   Yes, Your Honor.   Good morning again.

7          THE COURT:   Good morning.

8          MR. MADIOU:   I just want to take a moment to address

9    Mr. Ross's family.   The defense would like you to know that we

10   share our deepest condolences to you and we want to make clear

11   that any arguments that we have in mitigation for our client

12   should not take away from the real tragedy that brings us all

13   here today, and I know that Mr. Thomas is going to speak to

14   that specifically.

15        Your Honor, despite our disagreements, there's actually a

16   lot that the Government and the defense agree with.   We agree

17   that this was a horrific crime.   We agree that it was a

18   senseless killing of a young man with his future ahead of him,

19   who had the rest of his life ahead of him.   We also agree that

20   Mr. Thomas should be harshly punished for this evil act.

21        Our disagreement, though, is how much punishment, how much

22   suffering is sufficient but not greater than necessary.   And of

23   course, Your Honor, like all sentences, there's a heartland of

24   reasonable outcomes for this crime.   But the Court's

25   obligation, as you know, is to impose the sentence which is

01/11/2023 Sentencing

1    sufficient but not a day more than what is necessary to achieve
2    the sentencing goals, and we submit that that is no more than
3    25 years.
4         Your Honor, sentencing is obviously a moral judgment.  The
5    moral judgment obviously necessarily involves condemnation of
6    Mr. Thomas's crime and a recognition of the injury that he's
7    caused.  However, the real moral judgment, the more difficult
8    question is what is the response from our system.  How do we as
9    a society through the justice system punish the wrong.  And
10   3553(a) gives guidance.  They answer this by requiring the
11   courts to impose the lowest reasonable sentence but not one
12   that is greater than what is necessary.  Again, how much
13   suffering is required to address this crime for an 18-year-old.
14   And again, we submit that that sentence is no more than 25
15   years.
16        And just to highlight the arguments in our memo, first, we
17   feel this way because Mr. Thomas experienced a traumatic
18   childhood and lack of stable adult role models.  He was born to
19   children, to a 15- and a 16-year-old.  He was exposed to
20   violence, abuse, neglect.
21        The second argument we put before the Court is his age and
22   lack of developmental maturity at the time of the offense.  He
23   was five months past his 18th birthday which the science
24   clearly tells us is right smack in the middle of the brain's
25   development at such a young age.

1          Three, we pointed Your Honor to similar cases in this
2     district, most of which are more aggravating in a lot of
3     different respects than Mr. Thomas.  And again, it's hard to
4     talk about this because murder is murder.  But in the context
5     of federal sentencing, there are aggravating factors in the
6     cases that we have submitted that simply don't exist in
7     Mr. Thomas's case.
8          And finally, fourth, Your Honor, Mr. Thomas's early and
9     complete acceptance of responsibility which really shows a
10    stark contrast not just for his codefendants who are still
11    pending trial, but also as practitioners to most of our clients
12    that come to us at this young age charged with these serious
13    offenses.  It is an anomaly to have somebody that Mr. Proctor
14    and Ms. Smith and I represent at this age come to accept
15    responsibility so early.  He pled guilty in June which is only
16    a short few months after the case was not authorized to move
17    forward as a death penalty case.
18         I want to assure Your Honor and to the Ross family that
19    Mr. Thomas has suffered since he has been incarcerated and will
20    continue to suffer for many, many years.  Prison is suffering;
21    it's designed to be that way.  But in the last three years,
22    that suffering has increased exponentially.  And as advocates,
23    we see that up close and that's when Mr. Thomas as a teenager
24    entered into the system in the fall of 2020.
25         He entered prison as a teenager and will spend the

1    majority of his life in custody.  He's never flown on a plane,

2    never bought a drink, never held his young son which he only

3    discovered a few months ago.  He has done hard time and will

4    continue to do it, and he won't have the opportunities that

5    Congress has recently put into place to help individuals just

6    like Mr. Thomas.  He won't have the opportunity to participate

7    in FSA programming that would reduce his time.  He won't get

8    time off for drug treatment, like RDAP.  The time Your Honor

9    imposes is the time that he will serve.  And through all this,

10   he will have to figure out how to be a father to this

11   two-year-old son that he's just discovered in an attempt to

12   break the cycle that he himself found himself in with his

13   father being incarcerated.

14        As we argued in our memo, Mr. Thomas's history paved the

15   way for this day in a lot of ways.  He didn't have the support

16   he needed at home.  He experienced virtually every risk factor

17   a young man could have.  He was diagnosed with ADHD at age 3.

18   He was exposed to lead paint.  He had parents that were

19   children.  He experienced abandonment.  He was exposed to

20   violence both in his home and in the community.

21        At such a young age, Mr. Thomas witnessed numerous murders

22   personally.  We describe an incident where he saw murder

23   outside of his window when he was home from school.  He was --

24   this was normal to him.  This type of violence, this type of

25   destruction, devastation was a part of his daily life.  And for

1    people like me who grew up fundamentally differently than

2    Mr. Thomas, it never ceases to shock me at what he experienced

3    at such a young age.  And of course for Mr. Thomas, that's just

4    his life.  That's just normal for him.  He moved eight times,

5    went to nine different schools.  He had no stability in the

6    places that children need stability; school, home, communities.

7    He didn't have any of that.

8         Your Honor, we also spent a lot of time discussing cases

9    in this district.  And again, I know that that is always

10   awkward for the Court and for the advocates but it gives a

11   guidepost for all of us.  And with respect, we simply feel that

12   40 years is far more than what is necessary, and what

13   illustrates that best to us is the case of Rashaud Nesmith that

14   we discussed in our supplemental memo.

15        Mr. Nesmith was a member of a racketeering organization.

16   Again, something that Mr. Thomas was not involved in.

17   Mr. Thomas was responsible personally for three homicides --

18   I'm sorry, Mr. Nesmith was personally responsible for three

19   homicides.  There were also attempted murders including an

20   attempted murder, a carjacking which left a law enforcement

21   officer paralyzed.  Again, he was in a RICO organization that

22   had dozens upon dozens of murders and attempts murdered, and

23   this same office offered him an 11(c)(1)(c) plea for 40 years.

24   This is in stark contrast to Mr. Thomas.

25        And once again, I would like to reiterate that we realize

1  the gravity of his crime, but there is a next level, there is a

2  step up from what he has done, as illustrated in the Nesmith

3  case.  Mr. Thomas was not in a RICO conspiracy.  He was, as

4  Ms. Oldham explained to the Court, hired a day before this

5  murder took place by others who led and organized the

6  conspiracy.  This was not something that Mr. Thomas was

7  involved in.

8       Ms. Oldham also talks about the difference between some of

9  our examples and Mr. Thomas and we, frankly, agree with her.

10 We do think there are stark differences in some of these cases.

11 We think that people that are pleading guilty to being in a

12 racketeering organization which, by statute, necessitates

13 multiple overt acts, acts of violence, acts of drug dealing,

14 acts of intimidation, acts that rip communities apart, they

15 were held to account for those crimes in addition to the

16 homicides that they personally were involved in.

17      That is something that is not present in this case, Your

18 Honor.  This was a young man who made a life-altering decision

19 for the stupidest reason possible, and that speaks to his

20 developmental maturity at the time he said yes.  And he will

21 pay for that.  He has ruined his life because of that one

22 decision.

23      I think that it also bears mentioning, the case of his

24 uncle who is a high-up member in a RICO conspiracy and from his

25 letter to the Court, he was one of two main role models for

1    Mr. Thomas when he was growing up, the other being his father.
2    One of the tragedies in this case is when Mr. Thomas was still
3    housed in Pennsylvania, he would go and see him.  He was in the
4    same cell as his father.  He spent months incarcerated in
5    Pennsylvania with his father.  Now, Mr. Thomas really enjoyed
6    that time he got to spend with his dad.  But I think all of us
7    that grew up had the privilege of growing up in families with
8    father figures that could guide us and teach us, we recognize
9    that that was a tragedy in and of itself.
10       Again, I want to highlight, and I know the Court is
11   sensitive to this, Mr. Thomas's age at the time of the offense.
12   At five months past 18, the brain is still developing for
13   another almost ten years, nine years.  That's what science
14   tells us.  And it is at this point that the confluence of
15   factors in his life allowed him to say yes to participating in
16   this crime.  It is certainly not an excuse, but it does inform
17   that moral decision that the system has to impose.  As the
18   Supreme Court has said, juveniles are different.  Young adults
19   are different than adult offenders, and that is rooted in
20   science.
21       And what is also significant is that despite those
22   terrible decisions he made, once he was incarcerated, once he
23   understood the gravity of the situation, once he was counselled
24   by us, he made the right decision to accept responsibility.
25   And I also want to stress that he did so without the safety of

1   an 11 (c)(1)(C) plea, which is really common in this district.

2   I'm actually quite new to this district, and where I practiced

3   in New York, that is not something that is ever afforded to

4   defendants, but it is here.  The individuals that we list in

5   our memo, most of them, I believe all of them were afforded

6   11(c)(1)(C) pleas.  Mr. Thomas -- and of course we pitched this

7   to the Government and we obviously did not get that done, but

8   Mr. Thomas's decision didn't change.  He wasn't going to wait

9   for a better plea.  He accepted responsibility knowing that he

10  did not have the safety net of the 11(c)(1)(C).  And again, for

11  someone that young, I think that that's extraordinary in my

12  experience as an advocate.

13      I want to end by saying that my comments about Mr. Thomas

14  and his upbringing shouldn't suggest to the Court that I am

15  saying he is a victim.  There is only one victim in this case

16  and it is Juan Ross and his family.  And again, we offer our

17  condolences for this tragedy.  They should know that he will

18  have to suffer for this crime.  He will suffer when he gets out

19  of prison.  This will never not define him.  But it is

20  obviously necessary to examine why he made such a terrible

21  decision and to appreciate the backdrop.

22      I think I'll end by saying that it's been a difficult

23  representation of this individual, of Mr. Thomas.  It's been

24  difficult because there is obviously tragedy on all sides.  But

25  throughout that tragedy, he has evinced true remorse and he has

1  done everything that he can do at this stage.  He's accepted

2  full responsibility.  He has put his hands -- or put his fate

3  in the hands of the Court without the assurance that most

4  defendants are afforded.  And I know that the support that he

5  has, all of the people standing behind him, his mother, his

6  cousins, his uncles, aunts, his grandmother, and his son, they

7  will be with him throughout this ordeal and they will be there

8  on the other side.  So I want to assure the Court that he has

9  support that he needs now years later that will take him

10  through this incarceratory sentence and beyond.

11      Your Honor, if there is any questions that you have about

12  our sentencing submissions or anything that I've said today,

13  I'm happy to address them, but if not I will allow Mr. Thomas

14  to address Your Honor, which I know he wants to do.

15          THE COURT:  I appreciate your presentation.  I do not

16  have any questions.  I have consumed with interest all that

17  you've submitted.

18          MR. MADIOU:  Thank you, Your Honor.

19          THE COURT:  Mr. Thomas, please rise.

20      Mr. Thomas, you have an absolute right to address this

21  court.  I'm sure counsel has advised you well about those

22  rights.  It is not an obligation or a burden, but it's your

23  constitutional right to use your own mouth to speak to me if

24  you want to.  Your attorneys have done and will continue to do

25  an excellent job, but now is your time to speak to me if you

01/11/2023 Sentencing

1   wish to speak to me.  Do you wish to be heard?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Go ahead.

4              THE DEFENDANT:  First I want to say I'm truly sorry

5   to Mr. Ross's mother because I know she's in tremendous pain.

6   It's hard to be in the same courtroom as Mr. Ross's family.  I

7   can't face myself and I can't face my family.  I can't even

8   imagine how his family feels seeing me here today.

9        I want to apologize for my role in this tragedy.  I don't

10  want to make things worse.  I can't even think about how my

11  mother would feel losing me.  I have no one to blame for my

12  actions but myself.  I chose to be involved that day and I

13  think about that moment all the time.  It keeps me awake at

14  night.  I know the pain I have caused this family will never go

15  away.  I wish I could change the decisions I made.  They were

16  mine.  I'll continue to pay for them for the rest of my life.

17  In this very short time of my incarceration I've grown to learn

18  that I have become a statistic of a young black male in America

19  that loses his life to the system.

20       I want to apologize to Juan Ross's family.  I know that

21  this is not enough.  I know that I've caused suffering for his

22  family and I will live with that for the rest of my life.  I

23  want his family to know that I have suffered and will continue

24  to suffer for what I had did and I thank his mother for

25  forgiving me.  I'm not sure if I deserve it, but I'm truly

01/11/2023 Sentencing

1   sorry for what had taken place.

2       I know that these are just words and I can't take away the

3   pain I have caused.  I know I can't change the things I have

4   done and I know I have to live with this for the rest of my

5   life.  The only thing I can control now is what I do next and I

6   want everyone to know that I will make good decisions moving

7   forward one step at a time.  I know I have a lot of work to do

8   and I promise I will try my hardest to make others learn from

9   my mistakes.

10      Your Honor, when I leave prison I will have a good impact

11  on my community, I will teach others right from wrong, I will

12  use my experience to help others.  When I am released from

13  prison, I'll do the right thing by my family, teach my son

14  right from wrong, and guide him never make the same mistakes as

15  me.  I will become a positive influence to others and to my

16  friends and family and make them proud.  I plan on taking

17  courses in jail while at Beckley in West Virginia to get my

18  carpentry certification and plenty other trades that I can make

19  a living out of when I get home.

20      I pray that the Ross family finds peace.  I promise I will

21  make a difference, make different choices and make a difference

22  and lead a life that my family and my son can be proud of.  I

23  want to say I apologize to my mother and my son for causing

24  pain and confusion with my life's choices.  Thank you.

25          THE COURT:  Thank you very much, Mr. Thomas.  You may

1   have a seat.  Is there anything that the Government or the
2   defense needs to present?
3               MS. OLDHAM:  No, Your Honor.
4               THE COURT:  Anything else from the defense?
5               MR. MADIOU:  No, thank you, Your Honor.
6               THE COURT:  All right.  Just to sort of round out
7   what I have also considered, I mentioned earlier that I
8   appreciated that there were letters submitted with both the
9   Government's submissions as well as the defense's memo in
10  mitigation.  I did appreciate Ms. Stringfellow's letter on
11  behalf of Mr. Thomas, as well as your aunt, Mr. Thomas.
12  Ms. Taylor, in addition to being present here this morning, I
13  did appreciate your brief and difficult note, as well as
14  hearing from a niece and a grandfather of Mr. Ross's.
15          At this point I'm going to apply the factors that
16  everybody's been hearing about.  These are the factors set
17  forth in 18 U.S.C. 3553(a).  These are statutory factors, for
18  the benefit of those in the courtroom who are not
19  practitioners, that the Court is required to consider in
20  determining what is an appropriate disposition in this case.
21  So I'm going to recite some things that sound rather clinical
22  in nature.  And so for that, to Mr. Ross's family, as well as
23  those here in support of Mr. Thomas, I want to assure you that
24  the Court's consideration of these factors is anything but
25  clinical.

1          With respect to the history and characteristics of

2     Mr. Thomas, I do appreciate that Mr. Thomas was born on May

3     21st, 2002, to very young parents, age 15 and 16.  Mr. Thomas's

4     father was incarcerated for most of his life.  He's the oldest

5     or eldest of seven children, and I understand he has a

6     two-year-old child that he has not yet really come to know.

7          Mr. Thomas grew up in constant financial stress.  He was

8     raised in Baltimore by parents and extended family and reports

9     generally speaking being a mostly happy kid.  At age three,

10    Mr. Thomas was diagnosed with attention deficit hyperactive

11    disorder, did experience lead paint exposure.  I believe his

12    blood level was reported at four at its highest.  Does

13    experience asthma, has overall good health but I am also

14    mindful, Mr. Thomas, that you have a history of substance abuse

15    beginning very early at age 11 with daily marijuana use which

16    graduated to near-daily Percocet use for which you've never

17    received treatment.

18          Mr. Thomas functions in the low average range of

19    intelligence, and as everyone heard here today, moved at least

20    seven times and attended eight different schools before the age

21    of 15.  It is also notable to the Court that Mr. Thomas's

22    presence at school was inconsistent, to say the least.  Issues

23    of tardiness which of course lead to issues of performance were

24    really pervasive throughout Mr. Thomas's young life.

25          I do also note that Mr. Thomas was exposed to gang

1   violence and other violence from a very early age and severe

2   violence at a very early age.  In addition, I do appreciate

3   that Mr. Thomas was subjected to fairly typical or regular, I

4   should say, corporal punishment in the home.

5       Notably, Mr. Thomas's father was shot when he was five,

6   when Mr. Thomas was five, not his father, and was shot again in

7   2013.  Mr. Thomas lost two cousins in 2009, I believe one to

8   murder and the other to a flu virus.  Mr. Thomas witnessed a

9   murder at age nine and was held at gunpoint himself at age 14.

10  Mr. Thomas has also witnessed the shooting of his mother, his

11  sister, and his mother's wife.  Mr. Thomas's best friend

12  accidentally shot and killed himself I believe at age 16.  And

13  Mr. Thomas lost his stepfather to murder and another close

14  friend to street violence.

15      Mr. Thomas did graduate with a high school diploma or went

16  to Digital Harbor High and I think graduated in 2020, also

17  attended Silver Oak through the State Juvenile Services Program

18  and earned a certified nursing credential but has not yet taken

19  that test; is that correct, Mr. Thomas?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  As I said earlier, there are no

22  assets or debts to speak of and no real employment history to

23  speak of.  Referring to the defense's submission in

24  Dr. O'Connell's report, I appreciated that Dr. O'Connell

25  evaluated Mr. Thomas and explained that as a result of his

1  trauma history that Mr. Thomas suffers from what he referred to

2  as intrusive thoughts, daydreams, as well as feelings of being

3  on edge and that Mr. Thomas engages in avoidant behavior and

4  feels that he will not live a long life.  At age 12, Mr. Thomas

5  began smoking marijuana daily, and the doctor goes on to recite

6  the effects of the daily substance abuse problem that began

7  really when Mr. Thomas was barely out of age 10.  Mr. Thomas

8  reported to Dr. O'Connell that the drugs help him block stuff

9  out.

10        After evaluating the defendant, Mr. Thomas, including his

11  family, academic, psychosocial, mental, and criminal history,

12  Dr. O'Connell, a psychologist, a forensic psychologist,

13  explained in his report that Mr. Thomas meets the requirements

14  that he felt to diagnose him with attention deficit

15  hyperactivity disorder, combined presentation, posttraumatic

16  stress disorder, persistent depressive disorder with anxious

17  distress, cannabis use disorder, and opioid use disorder.

18        Dr. O'Connell opined ultimately that the factors and life

19  events that I've mentioned impacted Mr. Thomas's maturation and

20  are considerable mitigating factors relevant to his sentence

21  for this Court to consider.

22        With respect to the Government's position, the Government

23  expressed and I appreciate the recitation of regardless of what

24  negative circumstances Mr. Thomas's path may have taken him to,

25  the fact remains, says the Government, that Mr. Thomas made the

1   choice to engage in a murder-for-hire conspiracy that resulted

2   in the execution of a 23-year-old, which is true.  At the time

3   of the heinous crime, reports the Government to me and I

4   consider notable, Mr. Thomas had been on supervised probation

5   for just seven months after having been convicted of possession

6   of a firearm as a minor in the Circuit Court for Baltimore City

7   and the firearm recovered from Mr. Thomas in that case was

8   loaded.

9        The contents of Mr. Thomas's cell phone seized at the time

10  of his arrest highlights, I agree with the Government,

11  Mr. Thomas's penchant for firearms despite having a conviction

12  about possessing a firearm, having served jail time and being

13  on supervised probation.  This will inform the Court's

14  discussion later about the issue of deterrence in this

15  particular case, as well as the general need for deterrence

16  from a public safety aspect.

17       With respect to the nature and circumstances of the

18  offense, I won't be prolix about it because I think the record

19  has been plain this morning about the brutality of the crime,

20  Mr. Thomas, that you committed.  This was a murder-for-hire of

21  Juan Ross in broad daylight in a residential neighborhood of

22  Howard County, Maryland.  Mr. Thomas agreed to commit this act

23  with another because Mr. Ross, I understand, was suspected of

24  being a snitch.  Mr. Ross was shot eight times, six times to

25  the head, and Mr. Thomas was, of course, not responsible for

1    all shots necessarily but that is an uneditorialized

2    description of the offense.

3        I appreciate the defense's description of this as an evil

4    act, and I fairly agree with that.  The defense also presents

5    that Mr. Thomas's involvement in the offense cut short a young

6    life and nothing can mitigate that harm that he's inflicted

7    on -- the pain that he's inflicted on Mr. Ross's family

8    members.  The defense points my attention to the lack of

9    aggravating factors, for example, multiple homicides or related

10   drug trafficking and gang activity that mitigate or militate,

11   rather, in favor of the requested sentence that the defense has

12   set out this morning.

13       The Government, of course, argues that there are

14   aggravating factors that make this homicide particularly

15   atrocious, using the language of the Government.  In

16   particular, that the murder was in broad daylight, as I

17   mentioned, in a bustling Columbia neighborhood with citizens

18   milling about which demonstrates a very concerning reckless

19   disregard for the safety of others who are not involved, as

20   well the number of shots to Mr. Ross's head are indicative or

21   is indicative of an execution-style murder.  And lastly the

22   Government asked me to consider and I have that Mr. Thomas

23   committed the murder for his personal financial gain.

24       With respect to the seriousness of the offense, the need

25   to promote respect for the law, and the need to provide just

1    punishment, in my opinion the offense simply does not get more

2    serious or more brazen or more callous.  I am -- I keep coming

3    back, Mr. Thomas, I will tell you in candor, after reading all

4    of your life history and the important features of your life

5    that your attorneys have brought to my attention, none of which

6    is insignificant to me, I have a hard time getting over the

7    extraordinary brutality that was at issue in this case.  And so

8    that's a difficult thing for me to look past, I will tell you

9    that.  And not that anyone's asking me to look past it, but I

10   had difficulty reconciling it with other features of your life.

11        There is a great need to promote respect for the law here

12   on a number of levels.  First, the fact that this was committed

13   in broad daylight with other people who could also have been

14   injured or killed is deeply troubling to me.  The text

15   message -- the text messages in this case do suggest a

16   cavalier, if not cocky attitude about violence and, of course,

17   that the punishment be just is our north star here today, so

18   that's what our objective is.

19        I do want to point out just some of the salient features

20   of the defense's presentation that I have considered with

21   respect to the sentence request of 240 to 300 months being

22   appropriate and reasonable given Mr. Thomas's personal history

23   and characteristics, including the age at which Mr. Thomas was

24   when he committed the offense, his low intellectual or

25   cognitive functioning, the traumatic upbringing that I will say

1    he suffered through because I do believe notwithstanding

2    Mr. Thomas's report to Dr. O'Connell that he was generally a

3    happy kid that Mr. Thomas really sustained nothing more than a

4    suffering during his childhood.  Constant exposure to gang

5    violence and a lack of stable adult role models, there were

6    adults in Mr. Thomas's life, none of whom was particularly

7    stable.

8         I do also appreciate that the defense is asking me to use

9    other cases as comparators for this case to ensure that, to use

10   their language, the sentence imposed is in the heartland of

11   reasonable.  I also appreciate, Mr. Thomas, that you took

12   prompt responsibility for your actions, and I understand you've

13   expressed remorse, as you did here this morning.

14        The, Government of course, asked for a sentence of 480

15   months of imprisonment, which is 40 years, to reflect the

16   seriousness of Mr. Thomas's offense and to provide a just

17   punishment for a defendant who committed first-degree

18   premeditated murder.  Obviously, the loss to Ms. Taylor, as

19   well as others who loved Mr. Ross is something that I'm sure I

20   couldn't articulate.

21        With respect to the need for deterrence, Mr. Thomas was on

22   probation for a firearms offense at the time that Mr. Ross was

23   shot and killed.  The deterrence need is high here.  Obviously,

24   the threat of state time hanging over Mr. Thomas's head had

25   little to no deterrent effect.

1       And then there is the need of course to deter members of
2   the public at large who might be inclined to take Mr. Thomas's
3   lead and feel at liberty to take the life of another human
4   being with such apparent disregard for not only the victim but
5   the surrounding members of the community.
6       The Government does ask me to consider the need for
7   deterrence here as particularly heightened and does ask me to
8   recognize that violent offenders recidivate at a higher rate
9   than nonviolent offenders in every age bracket according to the
10  US Sentencing Commission, which is a report that was released
11  in 2010 on the recidivism rates of federal violent offenders.
12      With respect to the need to protect the public, it seems
13  to me, I suspect, you know, I hardly need to mention this, but
14  I am mindful that Mr. Ross was a cherry-picked victim and that
15  Mr. Thomas does not have a criminal record of violence as a
16  general matter.  But as I said earlier, I will be very candid,
17  I am appalled by the midday open-air callousness of this
18  offense that endangered many other people.  Mr. Thomas does not
19  necessarily pose a public safety threat in the way that drug
20  dealing does with more of an insidious public health crisis
21  aspect, but Mr. Thomas's willingness to do the ultimate to
22  decide to kill another human being, to plan how to go about
23  doing it and ultimately to do it raises a public protection
24  need that I think hardly needs explanation.  I do agree with
25  the Government that the need to protect the public from further

1   crime of this defendant in particular is paramount.

2        With respect to the need to avoid unwarranted sentence

3   disparities among defendants with similar records and

4   culpability, this is always a tough nut to crack, in my

5   opinion.  The defense argues that the list of cases that it

6   provided, it was a long list, I've read all of it very

7   carefully.  To use counsel's language, illustrates the

8   requested sentence is well within the heartland of reasonable

9   sentences for murder in this district, especially when

10  considering Mr. Thomas's unique personal history and the age at

11  which he was when he committed the crime.

12       The defense argues that the defendants listed are in

13  similar situations.  Of course the Government responds that

14  these defendants pled to RICO-based offenses and not murder,

15  attempted murder, or ordering a murder.  So I take from both

16  sides the significant features that I need to consider, and I

17  appreciated the defense's obviously very detailed and thorough

18  work in listing cases that in their opinion I ought to consider

19  and I have.

20       With respect to the need to provide Mr. Thomas with

21  training and/or treatment, it would seem to me that Mr. Thomas

22  is in need of and I understand from the report submitted to the

23  Court is interested in substance abuse treatment and perhaps

24  mental health treatment.

25       The advice of the Federal Sentencing Guidelines, which is

1    a factor I am supposed to consider, we sort of already talked

2    about this, but the guideline provisions say that based upon a

3    total offense level of 40 and a criminal history category of

4    III, that the guideline imprisonment range is 360 months to

5    life.  With respect to the Class A felony category, the

6    guideline range for a term of supervised release following the

7    period of incarceration is two to five years.  The fine range

8    for this offense, according to the guidelines, is 50 to

9    $250,000.  Obviously, I've already set forth that I'm not going

10   to impose a fine other than the mandatory $100 piece of it that

11   I have to impose.  And the guidelines do indicate that

12   restitution shall be ordered.  The Government is not seeking

13   restitution based on the demonstration by Ms. Taylor that

14   issues of the family expenses is not at issue.

15       With respect to the ultimate disposition of this case, the

16   sentence that the Court finds is sufficient but not greater

17   than necessary to comply with the purposes of 18 U.S.C.

18   3553(a)(2) is 420 months of incarceration.  That is 35 years,

19   Mr. Thomas.  And supervised release of three years following

20   the period of incarceration.

21       Counsel, I know you are well familiar with the standard

22   conditions that are set forth in the standing order of the

23   court at 2020-13.  I can relay into the record by reading it

24   verbatim the mandatory and standard conditions unless you want

25   to set forth on the record that you have gone through those

1  conditions with Mr. Thomas.

2          MR. MADIOU:  We have, Your Honor.

3          THE COURT:  Okay.  Does the Government require that I

4  read them into the record or are you satisfied with counsel's

5  representation?

6          MS. OLDHAM:  The Government's satisfied, Your Honor.

7          THE COURT:  Okay.  So I'm not going to relay for the

8  record the standard and mandatory conditions.  There are

9  additional conditions that I'm going to impose, Mr. Thomas, on

10  you following your period of incarceration and during your

11  period of supervised release.  I'm going to read them into the

12  record.  There are some, not too many, but there are quite a

13  few.

14      You must not use or possess any controlled substances

15  without a valid prescription.  If you have a valid prescription

16  card, you must disclose the prescription information to your

17  probation officer and follow the instructions on the

18  prescription.

19      You must participate in substance abuse treatment programs

20  as required by your probation officer with respect to the

21  provider, the location, the modality, the duration, et cetera.

22  You must submit to substance abuse testing if you have used a

23  prohibited substance when requested.  You must also provide the

24  probation officer with access to any requested financial

25  information and authorize the release of any financial

1    information which may be shared with the US Attorney's Office.

2        You must also participate in a mental health treatment

3    program and that will be provided to you much in the same way

4    that the substance abuse treatment program will be provided to

5    you which is to say through your probation officer who will be

6    responsible and have the discretion after consulting with the

7    treatment provider to determine what that will look like in

8    term of scope and duration and its intensity and its location.

9        I'm also going to require, Mr. Thomas, that you

10    participate in particular in a gambling addiction treatment

11    program based on your representation in the presentence report

12    that you felt that you had a problem with gambling.  So that

13    also will be required of you literally in the same way that the

14    other programs will be required of you, which is to say at the

15    discretion of your probation officer to figure out what that

16    will look like for you.

17        You must participate in a vocational services program and

18    follow the rules and regulations of that program.  I'm hoping

19    that this program, when we get there, will include job

20    readiness and job skills development training.  As I said,

21    there will be no fine imposed in the case as I find Mr. Thomas

22    has no job history that would allow that to occur and no assets

23    and otherwise has no means.  There will be no restitution

24    ordered for the victim's estate because the Government is not

25    seeking it.  The Court will sign that forfeiture order that has

1    been submitted, and the special assessment as to Count 5, of
2    course, is the required $100.
3         And I want to ask if the Government has any counts that it
4    now moves to dismiss?
5              MS. OLDHAM:  Court's indulgence, Your Honor.  Yes,
6    the Government moves to dismiss Count 1, 3, Count 4.
7              THE COURT:  Does the defense have any requests of the
8    Court in terms of the Bureau of Prisons as far as location or
9    anything else?
10             MR. MADIOU:  Yes, Your Honor.  We would ask that
11   you -- we would ask that you recommend that he be designated to
12   FCI Beckley.  At Beckley they have something called the Brave
13   Residential Program, which is a cognitive behavioral
14   residential treatment program for young males serving a first
15   federal sentence.  We believe -- actually, it was Mr. Thomas
16   that brought this to our attention so if the Court can make
17   that recommendation.
18             THE COURT:  The Court can and the Court will.
19             MR. MADIOU:  Thank you.
20             THE COURT:  Counsel, while you're standing, would you
21   advise Mr. Thomas of what rights he may have that still remain
22   with respect to -- I realize his appeal rights are not really
23   there but let's advise him anyway and please also advise him as
24   to his right to appeal any sentence he feels exceeds the
25   statutory maximum.

1     MR. PROCTOR:  Mr. Thomas, would you stand up, please,

2  briefly?  You have 14 days to appeal your sentence if you

3  believe the Judge has made an error from the entry of the

4  judgment which will be this afternoon, tomorrow.  All appeals

5  must be filed in writing.  Obviously, Mr. Madiou and I will

6  discuss it with you afterwards and should you choose to file an

7  appeal we will note it for you.  You may have waived several of

8  the issues that you could raise on appeal in entering your plea

9  of guilty.  Again, we'll discuss that, but do you understand

10  that if you wish to file an appeal you have 14 days from today?

11     THE DEFENDANT:  Yes.

12     THE COURT:  Thank you, counsel.  All right.

13  Mr. Thomas, you may have a seat.

14     A Judgment and Commitment Order will be prepared, as will

15  the Court's statement of reasons.  And with that, we will of

16  course order that Mr. Thomas be remanded.

17     Is there anything else from the Government?

18     MS. OLDHAM:  No, Your Honor.  Thank you.

19     THE COURT:  Anything else from the defense?

20     MR. MADIOU:  No, Your Honor.

21     THE COURT:  All right.  Thank you all very much.

22  Court's adjourned.

23     THE CLERK:  All rise.  This court stands adjourned.

24     (The proceedings concluded at 12:21 p.m.)

25

01/11/2023 Sentencing

```
1                  CERTIFICATE OF OFFICIAL REPORTER

2
            I, Amanda L. Longmore, Registered Professional Reporter,
3      in and for the United States District Court for the District of
       Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that
4      the foregoing is a true and correct transcript of the
       stenographically-reported proceedings held in the
5      above-entitled matter and that the transcript page format is in
       conformance with the regulations of the Judicial Conference of
6      the United States.

7                               Dated this 23rd day of February 2023
                                     -S-
8                               _____

9                               AMANDA L. LONGMORE, RPR
                                FEDERAL OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

01/11/2023 Sentencing

## $

**$100** [3] - 10:12; 40:10; 43:2
**$250,000** [2] - 5:21; 40:9

## 1

**1** [1] - 43:6
**10** [1] - 33:7
**10-year** [1] - 5:20
**11** [2] - 26:1; 31:15
**11(c)(1)(c** [2] - 23:23; 26:6
**11(c)(1)(C)** [1] - 26:10
**12** [1] - 33:4
**12:21** [1] - 44:24
**14** [4] - 14:22; 32:9; 44:2, 10
**15** [3] - 20:19; 31:3, 21
**16** [2] - 31:3; 32:12
**16-year-old** [1] - 20:19
**18** [5] - 5:17; 11:18; 25:12; 30:17; 40:17
**18-year-old** [1] - 20:13
**18th** [2] - 15:25; 20:23
**19** [1] - 5:25

## 2

**20** [1] - 14:4
**2002** [1] - 31:3
**2009** [1] - 32:7
**2010** [1] - 38:11
**2013** [1] - 32:7
**2020** [7] - 5:25; 12:1; 15:20, 25; 16:12; 21:24; 32:16
**2020-13** [1] - 40:23
**2022** [3] - 5:13; 13:19, 22
**21st** [4] - 15:20, 24; 16:13; 31:3

## 3

**23** [2] - 11:25; 12:6
**23-year-old** [1] - 34:2
**240** [2] - 8:11; 36:21
**25** [3] - 14:4; 20:3, 14
**28th** [2] - 13:19, 21
**2A1.1(a)** [1] - 9:3

## 3

**3** [2] - 22:17; 43:6
**30** [1] - 11:3
**300** [2] - 8:11; 36:21
**35** [1] - 40:18
**3553(a** [2] - 11:18; 20:10
**3553(a)** [1] - 30:17
**3553(a)(2** [1] - 40:18
**360** [3] - 9:16; 11:3; 40:4
**3rd** [1] - 13:1

## 4

**4** [1] - 43:6
**40** [14] - 8:8; 9:11; 11:5, 19; 13:25; 16:4, 7, 10; 23:12, 23; 37:15; 40:3
**40-year** [1] - 17:10
**420** [1] - 40:18
**43** [1] - 9:2
**480** [4] - 8:7; 11:7, 19; 37:14
**4th** [3] - 12:1; 16:12, 15

## 5

**5** [3] - 5:15; 10:23; 43:1
**50** [1] - 40:8

## 8

**800** [1] - 16:6
**82** [2] - 12:16;

15:23

## 9

**924** [1] - 5:17
**9th** [1] - 5:13

## A

**abandonmen t** [1] - 22:19
**able** [1] - 15:12
**absolute** [1] - 27:20
**absolutely** [1] - 18:3
**abuse** [7] - 20:20; 31:14; 33:6; 39:23; 41:19, 22; 42:4
**academic** [1] - 33:11
**accept** [2] - 21:14; 25:24
**acceptable** [1] - 9:10
**acceptance** [2] - 9:5; 21:9
**accepted** [2] - 26:9; 27:1
**access** [1] - 41:24
**accidentally** [1] - 32:12
**according** [2] - 38:9; 40:8
**account** [2] - 11:17; 24:15
**accuracies** [1] - 16:9
**accurately** [1] - 17:14
**achieve** [3] - 11:9; 17:11; 20:1
**act** [4] - 15:3; 19:20; 34:22; 35:4
**acted** [1] - 16:15
**actions** [3] - 12:21; 28:12; 37:12
**activity** [1] - 11:12; 35:10
**acts** [5] - 24:13
**addiction** [1] - 42:10
**addition** [4] -

15:21; 24:15; 30:12; 32:2
**additional** [2] - 9:7; 41:9
**address** [8] - 7:2; 13:3; 19:8; 20:13; 27:13, 20
**addressed** [1] - 3:15
**addressing** [1] - 2:4
**ADHD** [2] - 15:4; 22:17
**adjourned** [2] - 44:22
**adult** [3] - 20:18; 25:19; 37:5
**adults** [2] - 25:18; 37:6
**advice** [1] - 39:25
**advise** [3] - 43:21, 23
**advised** [2] - 13:20; 27:21
**advisory** [3] - 9:16; 11:7; 15:7
**advocate** [1] - 26:12
**advocates** [2] - 21:22; 23:10
**affected** [1] - 18:4
**afforded** [3] - 26:3, 5; 27:4
**afternoon** [3] - 12:12; 16:15; 44:4
**afterwards** [1] - 44:6
**age** [22] - 20:21, 25; 21:12, 14; 22:17, 21; 23:3; 25:11; 31:3, 9, 15, 20; 32:1, 9, 12; 33:4, 7; 36:23; 38:9; 39:10
**Agent** [1] - 2:10
**aggravating** [4] - 21:2, 5; 35:9, 14
**aggressive** [2]

- 15:3; 16:15
**ago** [1] - 22:3
**agree** [9] - 4:2; 19:16, 19; 24:9; 34:10; 35:4; 38:24
**agreed** [1] - 34:22
**agreement** [2] - 6:7; 8:25
**agrees** [1] - 11:1
**ahead** [4] - 12:5; 19:18; 28:3
**air** [1] - 38:17
**allocute** [1] - 2:24
**allow** [2] - 27:13; 42:22
**allowed** [1] - 25:15
**almost** [1] - 25:13
**altering** [1] - 24:18
**America** [1] - 28:18
**anomaly** [1] - 21:13
**answer** [1] - 20:10
**answered** [1] - 7:13
**anticipation** [1] - 10:15
**anxious** [1] - 33:16
**anyway** [1] - 43:23
**apart** [1] - 24:14
**apartment** [1] - 12:3
**apologize** [3] - 28:9, 20; 29:23
**appalled** [1] - 38:17
**apparent** [1] - 38:4
**appeal** [6] - 43:22, 24; 44:2, 7-8, 10
**appeals** [1] - 44:4
**appeared** [1] - 5:14
**apply** [1] - 30:15

**appreciate** [10] - 26:21; 27:15; 30:10, 13; 31:2; 32:2; 33:23; 35:3; 37:8, 11
**appreciated** [3] - 30:8; 32:24; 39:17
**approach** [2] - 2:19; 10:3
**approached** [1] - 13:10
**appropriate** [5] - 8:3; 11:19; 12:8; 30:20; 36:22
**area** [6] - 12:2, 17, 19; 16:20, 23; 17:4
**argued** [1] - 22:14
**argues** [3] - 35:13; 39:5, 12
**argument** [1] - 20:21
**arguments** [2] - 19:11; 20:16
**armed** [1] - 13:23
**arrest** [1] - 34:10
**articulate** [1] - 37:20
**ASAP** [1] - 13:5
**aspect** [2] - 34:16; 38:21
**aspects** [1] - 10:13
**assailants** [1] - 12:13
**assessment** [2] - 10:12; 43:1
**assets** [4] - 10:15; 32:22; 42:22
**assurance** [1] - 27:3
**assure** [3] - 21:18; 27:8; 30:23
**asthma** [1] - 31:13
**ATF** [2] - 2:11;

13:21
**atrocious** [1] - 35:15
**attempt** [1] - 22:11
**attempted** [3] - 23:19; 39:15
**attempts** [1] - 23:22
**attended** [1] - 31:20; 32:17
**attention** [6] - 4:12; 31:10; 33:14; 35:8; 36:5; 43:16
**attitude** [1] - 36:16
**Attorney's** [1] - 42:1
**attorneys** [3] - 7:10; 27:24; 36:5
**aunt** [1] - 30:11
**aunts** [1] - 27:6
**authorize** [1] - 41:25
**authorized** [1] - 21:16
**average** [1] - 31:18
**avoid** [1] - 39:2
**avoidant** [1] - 33:3
**awake** [1] - 28:13
**aware** [3] - 4:7; 14:23; 15:1
**awkward** [1] - 23:10

## B

**backdrop** [2] - 8:5; 26:21
**Baltimore** [3] - 13:22; 31:8; 34:6
**barely** [1] - 33:7
**base** [1] - 9:2
**based** [4] - 39:14; 40:2, 13; 42:11
**bears** [1] - 24:23
**Beckley** [3] - 29:17; 43:12
**become** [2] -

28:18; 29:15
began [3] - 15:20; 33:5
begin [2] - 16:13; 18:1
beginning [1] - 31:15
behalf [5] - 2:9, 15; 6:6; 10:20; 30:11
behavior [2] - 15:13; 33:3
behavioral [1] - 43:13
behind [1] - 27:5
bench [3] - 9:25; 10:4, 6
benefit [2] - 6:6; 30:18
best [2] - 23:13; 32:11
better [3] - 16:9; 26:9
between [3] - 8:11; 15:19; 24:8
beyond [1] - 27:10
big [1] - 3:2
birch [1] - 17:19
birthday [1] - 20:23
bitch [1] - 16:3
black [1] - 28:18
Blake [1] - 5:14
blame [1] - 28:11
block [1] - 33:8
blood [1] - 31:12
born [2] - 20:18; 31:2
bought [1] - 22:2
bracket [1] - 38:9
brain [1] - 25:12
brain's [1] - 20:24
brave [1] - 43:12
Braxton [1] - 13:3
brazen [1] - 36:2

break [1] - 22:12
breakdown [1] - 15:11
brief [1] - 30:13
briefly [2] - 2:19; 44:2
bring [1] - 4:6
brings [1] - 19:12
broad [3] - 34:21; 35:16; 36:13
brother [1] - 18:5
brought [2] - 36:5; 43:16
brutality [1] - 34:19; 36:7
burden [1] - 27:22
Bureau [1] - 43:8
burning [1] - 16:11
bustling [1] - 35:17
buy [1] - 16:6
buying [1] - 15:13

**C**

c)(1)(C [1] - 26:1
calculated [1] - 11:2
calculation [3] - 9:2, 4; 11:2
calculations [1] - 9:12
caliber [1] - 13:25
callous [1] - 36:2
callousness [1] - 38:17
candid [1] - 38:16
candor [1] - 36:3
cannabis [1] - 33:17
car [2] - 13:17
card [2] - 17:3; 41:16
carefully [1] - 39:7
carjacking [2]

- 13:24; 23:20
carpentry [1] - 29:18
carrying [1] - 14:10
case [30] - 2:6; 7:17; 8:4; 9:16; 10:12, 17; 11:11, 13, 19; 14:2, 8; 17:8; 21:7, 16-17; 23:13; 24:3, 17, 23; 25:2; 26:15; 30:20; 34:7, 15; 36:7, 15; 37:9; 40:15; 42:21
Case [1] - 2:10
cases [7] - 21:1, 6; 23:8; 24:10; 37:9; 39:5, 18
casing [1] - 16:24
category [4] - 9:15; 11:5; 40:3, 5
caused [4] - 20:7; 28:14, 21; 29:3
causing [1] - 29:23
cavalier [1] - 36:16
ceases [1] - 23:2
cell [4] - 12:16; 14:8; 25:4; 34:9
certainly [4] - 2:20; 11:22; 25:16
certification [1] - 29:18
certified [1] - 32:18
cetera [1] - 41:21
chance [3] - 3:1; 6:20
change [3] - 26:8; 28:15; 29:3
changed [1] - 18:8
characteristics [3] - 14:6;

31:1; 36:23
charged [3] - 5:23; 10:24; 21:12
charging [1] - 5:15
chase [1] - 10:13
cherry [1] - 38:14
cherry-picked [1] - 38:14
child [1] - 31:6
childhood [2] - 20:18; 37:4
children [4] - 20:19; 22:19; 23:6; 31:5
choice [1] - 34:1
choices [2] - 29:21, 24
choose [1] - 44:6
chose [2] - 18:14; 28:12
Christopher [2] - 2:14
Circuit [1] - 34:6
circumstances [3] - 11:20; 33:24; 34:17
cited [1] - 17:10
citing [3] - 15:4
citizens [1] - 35:17
City [2] - 13:22; 34:6
Class [2] - 5:20; 40:5
classic [1] - 12:22
cleaned [1] - 13:17
clear [5] - 5:3; 9:22, 24; 14:7; 19:10
clearly [2] - 14:11; 20:24
CLERK [2] - 6:24; 44:23
client [2] - 10:2; 19:11
clients [1] - 21:11
clinical [2] -

30:21, 25
close [3] - 18:5; 21:23; 32:13
co [1] - 2:17
co-counsel [1] - 2:17
cocky [1] - 36:16
coconspirator [5] - 12:17, 19; 13:5, 8; 17:2
coconspirators [1] - 13:2
codefendants [1] - 21:10
cognitive [2] - 36:25; 43:13
cold [1] - 15:15
cold-hearted [1] - 15:15
Columbia [3] - 12:3, 12; 35:17
combined [1] - 33:15
coming [1] - 36:2
comments [2] - 15:4; 26:13
Commission [1] - 38:10
commission [1] - 14:11
commit [1] - 34:22
commitment [1] - 44:14
committed [7] - 13:6; 34:20; 35:23; 36:12, 24; 37:17; 39:11
committing [1] - 15:9
common [1] - 26:1
communities [2] - 23:6; 24:14
community [4] - 17:16; 22:20; 29:11; 38:5
comparators [1] - 37:9
compelling [3] - 15:6; 17:7, 9

complete [2] - 13:9; 21:9
complex [1] - 12:4
comply [1] - 40:17
computation [2] - 8:24
concerning [2] - 10:6; 35:18
concluded [1] - 44:24
conclusion [1] - 3:9
conclusions [2] - 14:25; 15:6
condemnation [1] - 20:5
conditions [6] - 15:6; 40:22, 24; 41:1, 8
condolences [2] - 19:10; 26:17
Conference [1] - 10:4
conference [1] - 10:6
confirming [1] - 10:8
confluence [1] - 25:14
confusion [1] - 29:24
Congress [1] - 22:5
consequence [1] - 14:16
consider [10] - 11:16; 14:24; 30:19; 33:21; 34:4; 35:22; 38:6; 39:16, 18; 40:1
considerable [1] - 33:20
consideration [2] - 14:1; 30:24
considered [2] - 30:7; 36:20
considering [1] - 39:10
conspiracy [5] - 14:15; 24:3, 6, 24; 34:1
constant [1] -

31:7; 37:4
constitutional [1] - 27:23
consulting [1] - 42:6
consumed [1] - 27:16
contents [3] - 7:13; 14:8; 34:9
context [1] - 21:4
continue [5] - 21:20; 22:4; 27:24; 28:16, 23
contrast [2] - 21:10; 23:24
control [1] - 29:5
controlled [1] - 41:14
conversation [1] - 3:21
conversations [1] - 16:13
convicted [1] - 34:5
conviction [1] - 34:11
cooperating [1] - 10:7
corporal [1] - 32:4
correct [9] - 5:4, 25; 6:3; 7:25; 8:8, 12, 18; 9:18; 32:19
costs [3] - 3:17, 21
counsel [11] - 2:17-19; 5:2; 6:4; 7:15; 8:6; 27:21; 40:21; 43:20; 44:12
counsel's [3] - 6:8; 39:7; 41:4
counselled [1] - 25:23
Count [5] - 5:15; 10:23; 43:1, 6
counts [1] - 43:3
County [2] - 5:24; 34:22
couple [1] -

6:20
**course** [15] - 5:20; 6:11; 10:11; 19:23; 23:3; 26:6; 31:23; 34:25; 35:13; 36:16; 37:14; 38:1; 39:13; 43:2; 44:16
**courses** [1] - 29:17
**COURT** [60] - 2:3, 13, 18, 22; 3:5, 11, 18, 22, 25; 4:4, 7, 11, 14, 17, 22, 25; 5:2, 6, 9, 11; 6:3, 17; 7:1, 5, 9, 12, 15, 19, 22; 8:2, 10, 14, 19, 23; 9:10, 21; 10:1, 3, 8, 11; 11:24; 17:22; 19:1, 4, 7; 27:15, 19; 28:3; 29:25; 30:4, 6; 32:21; 41:3, 7; 43:7, 18, 20; 44:12, 19, 21
**court** [5] - 5:14; 27:21; 33:21; 40:23; 44:23
**Court** [30] - 2:4; 5:18, 23; 9:11; 10:4, 16; 11:16, 23; 13:20; 17:19, 21; 20:21; 23:10; 24:4, 25; 25:10, 18; 26:14; 27:3, 8; 30:19; 31:21; 34:6; 39:23; 40:16; 42:25; 43:8, 16, 18
**Court's** [5] - 17:17; 19:24; 30:24; 34:13; 44:15
**court's** [2] - 43:5; 44:22
**courtroom** [5]

- 9:23, 25; 12:10; 28:6; 30:18
**courts** [1] - 20:11
**cousin** [1] - 18:22
**cousins** [2] - 27:6; 32:7
**crack** [1] - 39:4
**credential** [1] - 32:18
**crime** [21] - 5:16; 10:25; 12:25; 13:20; 14:5, 9, 12; 15:13; 16:17; 17:15; 19:17, 24; 20:6, 13; 24:1; 25:16; 26:18; 34:3, 19; 39:1, 11
**crimes** [2] - 11:14; 24:15
**criminal** [9] - 9:13-15; 11:5, 12; 14:7; 33:11; 38:15; 40:3
**crisis** [1] - 38:20
**Crosstour** [1] - 13:15
**culpability** [1] - 39:4
**custody** [1] - 22:1
**cut** [2] - 10:13; 35:5
**cycle** [1] - 22:12

**D**

**dad** [1] - 25:6
**daily** [5] - 22:25; 31:15; 33:5
**Daquante** [4] - 2:9, 16; 6:25; 12:14
**data** [1] - 12:16
**daydreams** [1] - 33:2
**daylight** [3] - 34:21; 35:16; 36:13
**days** [2] - 44:2, 10
**deal** [1] - 17:5

**dealing** [2] - 24:13; 38:20
**death** [3] - 5:17; 10:25; 21:17
**debts** [1] - 32:22
**December** [2] - 13:19, 21
**decide** [1] - 38:22
**decided** [2] - 14:14; 18:7
**decision** [6] - 24:18, 22; 25:17, 24; 26:8, 21
**decisions** [3] - 25:22; 28:15; 29:6
**deepest** [1] - 19:10
**deeply** [1] - 36:14
**DEFENDANT** [11] - 6:22, 25; 7:4, 8, 11, 14; 8:1; 28:2, 4; 32:20; 44:11
**defendant** [9] - 5:13; 6:23; 10:6; 11:14; 12:14; 14:7; 33:10; 37:17; 39:1
**defendants** [5] - 26:4; 27:4; 39:3, 12, 14
**defense** [17] - 4:14; 5:9; 6:8; 14:21; 19:4, 9, 16; 30:2, 4; 35:4, 8, 11; 37:8; 39:5, 12; 43:7; 44:19
**defense's** [7] - 8:10; 14:3; 30:9; 32:23; 35:3; 36:20; 39:17
**deficit** [2] - 31:10; 33:14
**define** [1] - 26:19
**definition** [1] - 12:22
**degree** [1] - 37:17

**demonstrates** [1] - 35:18
**demonstration** [1] - 40:13
**depressive** [1] - 33:16
**describe** [2] - 17:15; 22:22
**description** [2] - 35:2
**deserve** [1] - 28:25
**designated** [1] - 43:11
**designed** [1] - 21:21
**despite** [4] - 17:13; 19:15; 25:21; 34:11
**destruction** [1] - 22:25
**detailed** [2] - 16:21; 39:17
**details** [2] - 14:23; 15:1
**detained** [1] - 5:24
**deter** [2] - 11:12; 38:1
**determine** [1] - 42:7
**determining** [1] - 30:20
**deterrence** [6] - 17:7; 34:14; 37:21, 23; 38:7
**deterrent** [1] - 37:25
**devastating** [1] - 11:13
**devastation** [1] - 22:25
**developing** [1] - 25:12
**development** [2] - 20:25; 42:20
**developmental** [2] - 20:22; 24:20
**diagnose** [1] - 33:14
**diagnosed** [2] - 22:17; 31:10
**difference** [3] - 24:8; 29:21
**differences** [1] - 24:10

**different** [6] - 21:3; 23:5; 25:18; 29:21; 31:20
**differently** [1] - 23:1
**difficult** [5] - 20:7; 26:22, 24; 30:13; 36:8
**difficulty** [1] - 36:10
**Digital** [1] - 32:16
**diploma** [1] - 32:15
**disagreement** [1] - 19:21
**disagreements** [1] - 19:15
**discharge** [2] - 5:16; 10:24
**disclose** [1] - 41:16
**discovered** [2] - 22:3, 11
**discretion** [2] - 42:6, 15
**discuss** [2] - 44:6, 9
**discussed** [1] - 23:14
**discussing** [1] - 23:8
**discussion** [3] - 2:21; 5:1; 34:14
**dismiss** [2] - 43:4, 6
**disorder** [6] - 31:11; 33:15
**disparities** [1] - 39:3
**disposition** [2] - 30:20; 40:15
**dispute** [2] - 8:3, 20
**disregard** [2] - 35:19; 38:4
**disrespectful** [1] - 4:12
**distract** [1] - 4:12
**distress** [1] - 33:17
**District** [1] - 5:23
**district** [5] - 21:2; 23:9;

26:1; 39:9
**doctor** [1] - 33:5
**done** [7] - 13:5; 22:3; 24:2; 26:7; 27:1, 24; 29:4
**down** [3] - 4:15, 18; 12:13
**dozens** [2] - 23:22
**Dr** [12] - 6:10; 7:24; 14:21, 25; 15:3; 32:24; 33:8, 12, 18; 37:2
**drink** [1] - 22:2
**driven** [1] - 17:1
**drug** [4] - 22:8; 24:13; 35:10; 38:19
**drugs** [1] - 33:8
**due** [1] - 5:24
**duly** [1] - 6:23
**dumb** [1] - 16:8
**duration** [3] - 15:23; 41:21; 42:8
**during** [8] - 5:16; 10:25; 12:20; 13:23; 14:11; 37:4; 41:10

**E**

**early** [5] - 21:8, 15; 31:15; 32:1
**earned** [1] - 32:18
**ECF** [2] - 12:15; 15:23
**edge** [3] - 15:1; 16:16; 33:3
**effect** [1] - 37:25
**effects** [1] - 33:6
**eight** [6] - 13:12; 16:7; 23:4; 31:20; 34:24
**either** [1] - 4:20

**eldest** [1] - 31:5
**emotional** [1] - 15:11
**employment** [1] - 32:22
**end** [3] - 5:1; 26:13, 22
**endangered** [1] - 38:18
**enforcement** [1] - 23:20
**engage** [1] - 34:1
**engages** [1] - 33:3
**enjoyed** [1] - 25:5
**ensure** [2] - 13:9; 37:9
**entered** [3] - 10:23; 21:24
**entering** [1] - 44:8
**entire** [1] - 15:23
**entitled** [1] - 9:4
**entry** [1] - 44:3
**error** [1] - 44:3
**especially** [1] - 39:9
**establish** [2] - 12:24; 13:2
**estate** [1] - 42:24
**esteem** [2] - 15:5; 16:16
**et** [1] - 41:21
**evaluated** [1] - 32:25
**evaluating** [1] - 33:10
**evaluation** [1] - 7:24
**event** [1] - 5:24
**events** [1] - 33:19
**evil** [2] - 19:20; 35:3
**evinced** [1] - 26:25
**examine** [1] - 26:20
**example** [1] - 35:9
**examples** [1] - 24:9
**exceeds** [1] - 43:24

excellent [1] - 27:25
excuse [1] - 25:16
execution [3] - 14:5; 34:2; 35:21
execution-style [2] - 14:5; 35:21
exhibits [1] - 6:9
exist [1] - 21:6
expenses [1] - 40:14
experience [5] - 18:8; 26:12; 29:12; 31:11, 13
experienced [4] - 20:17; 22:16, 19; 23:2
explain [2] - 17:14; 18:14
explained [3] - 24:4; 32:25; 33:13
explanation [1] - 38:24
exponentially [1] - 21:22
exposed [4] - 20:19; 22:18; 31:25
exposure [2] - 31:11; 37:4
expressed [2] - 33:23; 37:13
extended [1] - 31:8
extraordinary [2] - 26:11; 36:7

**F**

face [2] - 28:7
fact [2] - 33:25; 36:12
factor [3] - 14:24; 22:16; 40:1
factors [11] - 11:17; 21:5; 25:15; 30:15-17, 24; 33:18, 20; 35:9, 14

fairly [2] - 32:3; 35:4
fall [1] - 21:24
familiar [3] - 3:25; 16:20; 40:21
families [1] - 25:7
family [24] - 18:1, 5, 18-19, 22; 19:9; 21:18; 26:16; 28:6-8, 14, 20, 22-23; 29:13, 16, 20, 22; 30:22; 31:8; 33:11; 35:7; 40:14
far [3] - 3:17; 23:12; 43:8
fashion [1] - 15:3
fate [1] - 27:2
father [10] - 18:11; 22:10, 13; 25:1, 4-5, 8; 31:4; 32:5
father's [1] - 18:6
favor [1] - 35:11
FCI [1] - 43:12
features [4] - 36:4, 10, 19; 39:16
Federal [1] - 39:25
federal [4] - 10:23; 21:5; 38:11; 43:15
feelings [1] - 33:2
felony [2] - 5:20; 40:5
felt [3] - 16:14; 33:14; 42:12
few [6] - 7:2; 11:23; 21:16; 22:3; 41:13
figure [2] - 22:10; 42:15
figures [1] - 25:8
file [2] - 44:6, 10
filed [2] - 13:19; 44:5

final [1] - 9:11
finally [1] - 21:8
financial [5] - 10:13; 31:7; 35:23; 41:24
fine [11] - 4:22; 5:21; 10:1, 14, 16; 11:24; 17:22; 40:7, 10; 42:21
finish [1] - 17:5
finished [1] - 4:17
firearm [6] - 5:16; 10:25; 14:13; 34:6, 12
firearms [3] - 14:10; 34:11; 37:22
fired [1] - 13:11
first [6] - 11:20; 20:16; 28:4; 36:12; 37:17; 43:14
first-degree [1] - 37:17
five [6] - 5:22; 20:23; 25:12; 32:5; 40:7
fled [1] - 13:14
flown [1] - 22:1
flu [1] - 32:8
fold [1] - 4:21
follow [2] - 41:17; 42:18
following [6] - 2:21; 9:11; 16:13; 40:6, 19; 41:10
forensic [2] - 14:21; 33:12
forfeiture [2] - 10:9; 42:25
forgive [3] - 18:17, 19
forgiving [1] - 28:25
forth [6] - 2:25; 15:19; 30:17; 40:9, 22, 25
forward [3] - 17:18; 21:17; 29:7
four [1] - 31:12

fourth [1] - 21:8
frankly [1] - 24:9
friend [3] - 18:1; 32:11, 14
friends [4] - 12:2, 4; 18:5; 29:16
FSA [1] - 22:7
full [2] - 6:24; 27:2
fully [2] - 2:4
functioning [1] - 36:25
functions [1] - 31:18
fundamentally [1] - 23:1
funeral [1] - 3:17
Futter [1] - 2:11
future [1] - 19:18

**G**

gain [2] - 17:9; 35:23
gambling [2] - 42:10, 12
gang [3] - 31:25; 35:10; 37:4
Gary [1] - 2:17
general [2] - 34:15; 38:16
generally [2] - 31:9; 37:2
girlfriend [4] - 12:6; 13:15; 18:5
given [5] - 2:24; 3:1; 6:20; 12:5; 36:22
Glock [5] - 14:19; 16:8, 10
goals [5] - 11:9, 15, 17; 17:12; 20:2
God [2] - 18:13, 15
Government [39] - 2:9; 4:8; 5:7; 6:15; 7:19; 8:6, 16;

9:6; 10:18, 20; 11:1; 12:24; 13:2, 19; 15:12, 17; 17:10, 13; 19:2, 16; 26:7; 30:1; 33:22, 25; 34:3, 10; 35:13, 15, 22; 37:14; 38:6, 25; 39:13; 40:12; 41:3; 42:24; 43:3, 6; 44:17
Government's [15] - 3:9; 4:3; 6:11; 8:6; 11:6, 16, 18, 22; 12:15; 13:18; 15:22; 16:21; 30:9; 33:22; 41:6
grab [1] - 16:3
Grace [1] - 18:16
graduate [1] - 32:15
graduated [2] - 31:16; 32:16
grandfather [1] - 30:14
grandmother [1] - 27:6
gravity [2] - 24:1; 25:23
great [2] - 3:4; 36:11
greater [5] - 11:8; 17:11; 19:22; 20:12; 40:16
grew [2] - 23:1; 25:7; 31:7
grocery [1] - 17:2
growing [2] - 25:1, 7
grown [1] - 28:17
guidance [1] - 20:10
guide [2] - 25:8; 29:14
guideline [4] - 9:3; 40:2, 4, 6
Guidelines [1]

- 39:25
guidelines [8] - 8:24; 9:2, 16; 11:3, 7; 15:8; 40:8, 11
guidepost [1] - 23:11
guilt [1] - 5:18
guilty [6] - 5:15; 10:5, 23; 21:15; 24:11; 44:9
gunned [1] - 12:13
gunpoint [1] - 32:9
guns [3] - 14:18; 15:14, 24

**H**

hands [2] - 27:2
hang [1] - 12:2
hanging [4] - 12:1; 14:14, 16; 37:24
happy [3] - 27:13; 31:9; 37:3
Harbor [1] - 32:16
hard [5] - 18:2; 21:3; 22:3; 28:6; 36:6
hardest [2] - 18:3; 29:8
hardly [3] - 15:6; 38:13, 24
harm [1] - 35:6
harshly [1] - 19:20
head [7] - 13:11; 14:14, 16; 34:25; 35:20; 37:24
headphones [1] - 10:2
health [4] - 31:13; 38:20; 39:24; 42:2
hear [1] - 8:5
heard [4] - 10:19; 19:5; 28:1; 31:19
hearing [2] - 30:14, 16

- 39:25

hears [1] - 2:24
heart [1] - 18:19
hearted [1] - 15:15
heartland [1] - 19:23; 37:10; 39:8
hearts [1] - 18:9
heck [1] - 17:3
heightened [1] - 38:7
heinous [1] - 34:3
held [3] - 22:2; 24:15; 32:9
help [3] - 22:5; 29:12; 33:8
High [1] - 32:16
high [3] - 34:24; 32:15; 37:23
high-up [1] - 24:24
higher [1] - 38:8
highest [1] - 31:12
highlight [1] - 11:23; 20:16; 25:10
highlighting [1] - 11:15
highlights [2] - 15:22; 34:10
himself [5] - 14:18; 22:12; 32:9, 12
hire [7] - 12:25; 13:8; 14:5, 15; 17:8; 34:1, 20
hired [1] - 24:4
history [17] - 9:13-15; 11:5; 14:6; 22:14; 31:1, 14; 32:22; 33:1, 11; 36:4, 22; 39:10; 40:3; 42:22
hit [1] - 8:15
hold [1] - 17:20
home [7] - 2:3;

22:16, 20, 23; 23:6; 29:19; 32:4
**homicide** [1] - 35:14
**homicides** [4] - 23:17, 19; 24:16; 35:9
**Honda** [1] - 13:15
**Honor** [65] - 2:8, 10, 14; 3:7; 5:5, 8, 10; 6:1, 15-16; 7:18, 21; 8:9, 18, 21-22; 9:9, 19-20, 24; 10:10, 21-22; 11:1, 6, 9, 13, 15, 20, 23, 25; 12:20; 13:18; 14:1, 20; 15:9, 21; 16:17; 17:6, 12, 14; 19:2, 6, 15, 23; 20:4; 21:1, 8, 18; 22:8; 23:8; 24:18; 27:11, 14, 18; 29:10; 30:3, 5; 41:2, 6; 43:5, 10; 44:18, 20
**hope** [1] - 18:19
**hoping** [1] - 42:18
**horrific** [1] - 19:17
**hour** [1] - 12:18
**housed** [1] - 25:3
**Howard** [2] - 5:24; 34:22
**human** [2] - 38:3, 22
**hunting** [1] - 12:21
**husband** [1] - 18:12
**hyperactive** [1] - 31:10
**hyperactivity** [1] - 33:15

**I**

**III** [3] - 9:15; 11:5; 40:4
**illustrated** [1] - 24:2
**illustrates** [2] - 23:13; 39:7
**imagine** [1] - 28:8
**immediate** [1] - 12:19
**impact** [10] - 2:23; 3:6, 8; 4:9; 6:12; 11:13; 12:9; 17:15, 18; 29:10
**impacted** [1] - 33:19
**important** [2] - 14:24; 36:4
**impose** [6] - 19:25; 20:11; 25:17; 40:10; 41:9
**imposed** [4] - 8:7, 11; 37:10; 42:21
**imposes** [1] - 22:9
**imposing** [1] - 14:1
**imprisonment** [4] - 5:21; 8:4; 37:15; 40:4
**incarcerated** [5] - 21:19; 22:13; 25:4, 22; 31:4
**incarceration** [7] - 9:17; 14:14; 28:17; 40:7, 18, 20; 41:10
**incarceratory** [1] - 27:10
**incident** [1] - 22:22
**inclined** [1] - 38:2
**include** [3] - 10:5; 15:23; 42:19
**included** [2] - 15:17, 22
**including** [5] - 6:8; 23:19; 33:10; 36:23

**inconsistent** [1] - 31:22
**increased** [1] - 21:22
**incurred** [1] - 3:20
**indicate** [1] - 40:11
**indicated** [2] - 3:16; 10:22
**indicative** [2] - 35:20
**indictment** [2] - 5:15; 10:24
**individual** [2] - 16:1; 26:23
**individuals** [3] - 12:13; 22:5; 26:4
**indulgence** [1] - 43:5
**inference** [1] - 16:25
**inflicted** [1] - 35:6
**influence** [1] - 29:15
**inform** [2] - 25:16; 34:13
**information** [3] - 41:16, 25; 42:1
**initial** [1] - 16:24
**injured** [1] - 36:14
**injury** [1] - 20:6
**insidious** [1] - 38:20
**insignificant** [1] - 36:6
**instance** [1] - 3:19
**instructions** [1] - 41:17
**intellectual** [1] - 36:24
**intelligence** [1] - 31:19
**intended** [4] - 18:10
**intensity** [1] - 42:8
**intent** [1] - 9:8
**intention** [1] - 3:7
**interest** [1] - 27:16
**interested** [1] -

39:23
**interpreter** [1] - 5:3
**interview** [1] - 7:6
**intimidation** [1] - 24:14
**intrusive** [1] - 33:2
**Investigation** [1] - 7:6
**investigation** [2] - 7:23; 15:10
**involved** [6] - 11:11; 23:16; 24:7, 16; 28:12; 35:19
**involvement** [2] - 14:9; 35:5
**involves** [1] - 20:5
**issue** [8] - 3:17; 4:3; 7:20; 8:14; 10:17; 34:14; 36:7; 40:14
**issued** [1] - 5:18
**issues** [5] - 8:19; 31:22; 40:14; 44:8
**itself** [1] - 25:9

**J**

**jail** [3] - 14:15; 29:17; 34:12
**Jennifer** [1] - 2:17
**job** [5] - 13:9; 27:25; 42:19, 22
**Joshua** [1] - 2:11
**JRR-21-494** [1] - 2:10
**Juan** [7] - 11:1, 25; 15:18; 17:24; 26:16; 28:20; 34:21
**judge** [1] - 5:14
**Judge** [2] - 5:14; 44:3
**judgment** [5] - 20:4, 7; 44:4, 14
**June** [2] - 5:13;

21:15
**justice** [1] - 20:9
**justify** [1] - 15:7
**juvenile** [1] - 32:17
**juveniles** [1] - 25:18

**K**

**keep** [1] - 36:2
**keeps** [1] - 28:13
**kid** [2] - 31:9; 37:3
**kill** [1] - 38:22
**killed** [4] - 13:10; 32:12; 36:14; 37:23
**killing** [1] - 19:18
**Kim** [1] - 2:8
**kind** [1] - 16:4
**knowing** [1] - 26:9

**L**

**lack** [4] - 20:18, 22; 35:8; 37:5
**language** [3] - 35:15; 37:10; 39:7
**large** [3] - 4:6; 18:22; 38:2
**last** [2] - 3:15; 21:21
**lastly** [3] - 17:6, 13; 35:21
**law** [3] - 23:20; 35:25; 36:11
**lay** [1] - 8:4
**lead** [5] - 22:18; 29:22; 31:11, 23; 38:3
**learn** [2] - 28:17; 29:8
**learned** [1] - 13:21
**least** [3] - 12:18; 31:19, 22
**leave** [1] - 29:10
**led** [1] - 24:5

**left** [3] - 2:16; 3:23; 23:20
**lengthy** [1] - 7:5
**letter** [2] - 24:25; 30:10
**letters** [4] - 3:12; 6:10, 12; 30:8
**level** [8] - 9:2, 4, 7, 11; 11:4; 24:1; 31:12; 40:3
**levels** [1] - 36:12
**liberty** [1] - 38:3
**life** [29] - 5:21; 9:16; 11:4; 12:5; 15:10; 18:7; 19:19; 22:1, 25; 23:4; 24:18, 21; 25:15; 28:16, 19, 22; 29:5, 22; 31:4, 24; 33:4, 18; 35:6; 36:4, 10; 37:6; 38:3; 40:5
**life's** [1] - 29:24
**life-altering** [1] - 24:18
**light** [1] - 14:25
**list** [3] - 26:4; 39:5
**listed** [1] - 39:12
**listing** [1] - 39:18
**literally** [2] - 12:12; 42:13
**live** [3] - 28:22; 29:4; 33:4
**living** [1] - 29:19
**loaded** [1] - 34:8
**locate** [1] - 16:18
**location** [4] - 12:16; 41:21; 42:8; 43:8
**logical** [1] - 16:25
**look** [4] - 36:8; 42:7, 16

**looking** [1] - 12:20
**looks** [1] - 8:14
**loses** [1] - 28:19
**losing** [1] - 28:11
**loss** [1] - 37:18
**lost** [2] - 32:7, 13
**loved** [3] - 12:2; 17:25; 37:19
**loves** [1] - 18:23
**loving** [1] - 12:6
**low** [4] - 15:5; 16:16; 31:18; 36:24
**lower** [1] - 15:7
**lowest** [1] - 20:11
**lying** [1] - 12:22

**M**

**ma'am** [1] - 6:22
**MADIOU** [22] - 2:14, 20; 3:4; 4:2, 16, 24; 5:5, 10; 6:2, 16; 7:18; 8:13, 22; 9:20; 19:6, 8; 27:18; 30:5; 41:2; 43:10, 19; 44:20
**Madiou** [4] - 2:15; 5:3; 44:5
**main** [1] - 24:25
**majority** [1] - 22:1
**male** [1] - 28:18
**males** [1] - 43:14
**man** [3] - 19:18; 22:17; 24:18
**mandatory** [7] - 3:18; 4:1; 5:20; 10:12; 40:10, 24; 41:8
**marijuana** [3] -

15:4; 31:15; 33:5
**Maryland** [2] - 12:3; 34:22
**mask** [2] - 2:5
**matter** [4] - 2:5; 5:4; 14:17; 38:16
**maturation** [1] - 33:19
**maturity** [2] - 20:22; 24:20
**maximum** [1] - 43:25
**mean** [2] - 2:24; 4:2
**meaning** [1] - 13:6
**means** [4] - 9:11, 15; 14:13; 42:23
**meets** [1] - 33:13
**member** [2] - 23:15; 24:24
**members** [3] - 35:8; 38:1, 5
**memo** [6] - 7:16; 20:16; 22:14; 23:14; 26:5; 30:9
**memorandum** [8] - 6:8, 12; 11:22; 12:15; 13:18; 15:17, 23; 16:22
**mental** [4] - 15:11; 33:11; 39:24; 42:2
**mention** [2] - 6:4; 38:13
**mentioned** [5] - 3:23; 6:14; 30:7; 33:19; 35:17
**mentioning** [1] - 24:23
**mercy** [1] - 18:16
**message** [3] - 13:3; 36:15
**messages** [4] - 15:16, 20-21; 36:15
**Michael** [1] - 14:21
**midday** [1] - 38:17
**middle** [2] -

12:11; 20:24
**might** [2] - 4:12; 38:2
**militate** [1] - 35:10
**milling** [1] - 35:18
**mindful** [2] - 31:14; 38:14
**mine** [1] - 28:16
**minimum** [1] - 5:21
**minor** [1] - 34:6
**minute** [1] - 12:11
**mistakes** [2] - 29:9, 14
**mitigate** [2] - 35:6, 10
**mitigating** [1] - 33:20
**mitigation** [5] - 6:8; 7:15; 19:5, 11; 30:10
**modality** [1] - 41:21
**models** [3] - 20:18; 24:25; 37:5
**moment** [4] - 2:19; 12:5; 19:8; 28:13
**Monday** [1] - 5:13
**month** [1] - 16:14
**months** [16] - 8:8, 12; 9:16; 11:3, 7, 19; 20:23; 21:16; 22:3; 25:4, 12; 34:5; 36:21; 37:15; 40:4, 18
**moral** [4] - 20:4, 7; 25:17
**morning** [13] - 2:8, 12-14, 18; 12:10; 19:6; 30:12; 34:19; 35:12; 37:13
**most** [6] - 14:12; 21:2, 11; 26:5; 27:3; 31:4

mostly [2] - 8:24; 31:9
**mother** [13] - 3:8; 12:7; 17:16, 25; 18:14, 18; 27:5; 28:5, 11, 24; 29:23; 32:10
**mother's** [1] - 32:11
**motion** [1] - 9:6
**mouth** [1] - 27:23
**move** [1] - 21:16
**moved** [2] - 23:4; 31:19
**moves** [2] - 43:4, 6
**moving** [1] - 29:6
**MR** [25] - 2:14, 20; 3:4; 4:2, 16, 24; 5:5, 10; 6:2, 16; 7:18; 8:13, 22; 9:20, 24; 10:2; 19:6, 8; 27:18; 30:5; 41:2; 43:10, 19; 44:1, 20
**MS** [28] - 2:8; 3:7, 15, 20, 24; 4:6, 10, 13, 20, 23; 5:8; 6:1, 15; 7:21; 8:9, 18, 21; 9:9, 19; 10:10, 21; 11:25; 17:24; 19:2; 30:3; 41:6; 43:5; 44:18
**multiple** [2] - 24:13; 35:9
**murder** [33] - 11:11; 12:18, 25; 13:6, 8, 20; 14:5, 15; 15:9, 18; 16:12, 23; 17:8; 18:7, 15; 21:4; 22:22; 23:20; 24:5; 32:8, 13; 34:1, 20; 35:16, 21, 23; 37:18;

39:9, 14
**murder-for-hire** [7] - 12:25; 13:8; 14:5, 15; 17:8; 34:1, 20
**murdered** [2] - 12:1; 23:22
**murders** [3] - 22:21; 23:19, 22
**must** [8] - 41:14, 16, 19, 22-23; 42:2, 17; 44:5

**N**

**name** [1] - 6:24
**nature** [3] - 11:20; 30:22; 34:17
**near** [1] - 31:16
**near-daily** [1] - 31:16
**nearby** [1] - 17:2
**necessarily** [3] - 20:5; 35:1; 38:19
**necessary** [8] - 11:9; 17:11; 19:22; 20:1, 12; 23:12; 26:20; 40:17
**necessitates** [1] - 24:12
**need** [25] - 4:4; 5:3; 9:22; 17:6, 9; 23:6; 34:15; 35:24; 36:11; 37:21, 23; 38:1, 6, 12-13, 16-17; 39:2, 16, 20, 22
**needed** [2] - 16:22; 22:16
**needs** [3] - 27:9; 30:2; 38:24
**negative** [1] - 33:24
**neglect** [1] - 20:20
**neighborhood** [4] - 16:19,

24; 34:21; 35:17
**nephew** [1] - 18:22
**Nesmith** [4] - 23:13, 15, 18; 24:2
**net** [1] - 26:10
**never** [9] - 18:8; 22:1; 23:2; 26:19; 28:14; 29:14; 31:16
**new** [1] - 26:2
**New** [1] - 26:3
**next** [5] - 12:12; 13:16; 18:3; 24:1; 29:5
**Nick** [3] - 15:20; 16:1, 4
**nick** [1] - 16:5
**niece** [1] - 30:14
**night** [1] - 28:14
**nine** [3] - 23:5; 25:13; 32:9
**none** [3] - 17:14; 36:5; 37:6
**nonviolent** [1] - 38:9
**normal** [2] - 22:24; 23:4
**north** [1] - 36:17
**notable** [2] - 31:21; 34:4
**notably** [2] - 6:9; 32:5
**note** [4] - 15:9; 30:13; 31:25; 44:7
**noted** [1] - 14:22
**nothing** [2] - 35:6; 37:3
**notification** [1] - 9:8
**notwithstanding** [1] - 37:1
**November** [1] - 5:25; 15:25
**number** [5] - 13:9, 13; 17:4; 35:20; 36:12
**Number** [1] -

2:10
**numerous** [1] - 22:21
**nursing** [1] - 32:18
**nut** [1] - 39:4

**O**

**O'Connell** [9] - 7:24; 14:21, 25; 32:24; 33:8, 12, 18; 37:2
**O'Connell's** [3] - 6:10; 15:3; 32:24
**Oak** [1] - 32:17
**objection** [2] - 7:16; 9:1
**objective** [1] - 36:18
**obligation** [2] - 19:25; 27:22
**observations** [1] - 15:5
**obviously** [11] - 8:2; 20:4; 26:7, 20, 24; 37:18, 23; 39:17; 40:9; 44:5
**occur** [1] - 42:22
**occurred** [2] - 2:21; 16:23
**October** [7] - 12:1; 13:1; 15:20, 24; 16:12, 15
**oddities** [1] - 4:4
**offenders** [4] - 25:19; 38:8, 11
**offense** [22] - 9:2, 11; 11:4, 10, 21; 14:3, 13, 24; 15:1; 20:22; 25:11; 34:18; 35:2, 5, 24; 36:1, 24; 37:16, 22; 38:18; 40:3, 8
**offenses** [2] - 21:13; 39:14
**offer** [1] - 26:16
**offered** [1] -

23:23
**Office** [2] - 11:2; 42:1
**office** [3] - 4:21; 17:19; 23:23
**officer** [6] - 23:21; 41:17, 20, 24; 42:5, 15
**old** [4] - 12:1, 6; 22:11; 31:6
**oldest** [1] - 31:4
**OLDHAM** [27] - 2:8; 3:7, 15, 20, 24; 4:6, 10, 13, 20, 23; 5:8; 6:1, 15; 7:21; 8:9, 18, 21; 9:9, 19, 10, 21; 11:25; 19:2; 30:3; 41:6; 43:5; 44:18
**Oldham** [5] - 2:8; 10:8, 19; 24:4, 8
**once** [14] - 9:7; 12:11, 14; 13:1, 22; 14:11; 20:11; 24:21, 25; 25:2; 26:15; 28:11; 29:7; 32:7
**one** [14] - 9:7; 12:11, 14; 13:1, 22; 14:11; 20:11; 24:21, 25; 25:2; 26:15; 28:11; 29:7; 32:7
**one-level** [1] - 9:7
**open** [1] - 38:17
**open-air** [1] - 38:17
**opined** [1] - 33:18
**opinion** [3] - 36:1; 39:5, 18
**opioid** [1] - 33:17
**opportunities** [1] - 22:4
**opportunity** [2] - 7:9; 22:6
**ordeal** [1] - 27:7
**order** [8] -

8:16; 10:9, 16; 13:7; 40:22; 42:25; 44:14, 16
**ordered** [2] - 40:12; 42:24
**ordering** [1] - 39:15
**organization** [3] - 23:15, 21; 24:12
**organized** [1] - 24:5
**originally** [1] - 5:23
**otherwise** [1] - 42:23
**ought** [1] - 39:18
**outcomes** [1] - 19:24
**outlined** [2] - 11:18; 12:15
**outside** [1] - 22:23
**overall** [1] - 31:13
**overly** [2] - 15:3; 16:15
**overt** [1] - 24:13
**own** [1] - 27:23
**owned** [1] - 13:15

**P**

**p.m** [1] - 44:24
**Page** [1] - 14:22
**paid** [2] - 10:16; 13:7
**pain** [5] - 28:5, 14; 29:3, 24; 35:7
**paint** [2] - 22:18; 31:11
**paragraph** [1] - 14:23
**paralyzed** [1] - 23:21
**paramount** [1] - 39:1
**parents** [3] - 22:18; 31:3, 8
**parking** [2] - 12:3; 17:5
**part** [1] - 22:25
**participate** [6]

- 14:15; 22:6; 41:19; 42:2, 10, 17
**participating** [1] - 25:15
**particular** [7] - 8:19; 14:2; 17:16; 34:15; 35:16; 39:1; 42:10
**particularly** [3] - 35:14; 37:6; 38:7
**past** [4] - 20:23; 25:12; 36:8
**path** [1] - 33:24
**paved** [1] - 22:14
**pay** [3] - 16:8; 24:21; 28:16
**paying** [1] - 16:6
**peace** [1] - 29:20
**pecuniary** [1] - 17:9
**penalty** [1] - 21:17
**penchant** [2] - 14:9; 34:11
**pending** [1] - 21:11
**Pennsylvania** [2] - 25:3, 5
**people** [7] - 4:5; 15:14; 23:1; 24:11; 27:5; 36:13; 38:18
**Percocet** [1] - 31:16
**performance** [1] - 31:23
**perhaps** [4] - 4:20; 39:23
**period** [5] - 14:13; 40:7, 20; 41:10
**permission** [1] - 17:17
**persistent** [1] - 33:16
**person** [1] - 16:22
**personal** [3] - 35:23; 36:22; 39:10
**personally** [4]

- 22:22; 23:17; 24:16
**pervasive** [1] - 31:24
**phone** [5] - 12:16; 14:8; 15:16, 19; 34:9
**picked** [1] - 38:14
**picture** [1] - 17:20
**pictures** [2] - 15:18, 25
**piece** [4] - 3:14; 4:18; 40:10
**pitched** [1] - 26:6
**place** [3] - 22:5; 24:5; 29:1
**placed** [2] - 14:18; 15:2
**places** [2] - 9:14; 23:6
**plain** [1] - 34:19
**plan** [2] - 29:16; 38:22
**plane** [1] - 22:1
**planned** [1] - 16:17
**planning** [2] - 9:6; 12:24
**plea** [8] - 6:7; 8:25; 10:5, 23; 23:23; 26:1, 9; 44:8
**plead** [1] - 9:8
**pleading** [1] - 24:11
**pleas** [1] - 26:6
**pleasure** [1] - 4:25
**pled** [3] - 5:15; 21:15; 39:14
**plenty** [1] - 29:18
**point** [6] - 9:4, 21; 16:19; 25:14; 30:15; 36:19
**pointed** [3] - 16:25; 17:3; 21:1
**points** [3] - 9:14; 11:23; 35:8
**policy** [1] -

10:4
**pose** [1] - 38:19
**position** [5] - 8:7, 10, 13; 11:16; 33:22
**positive** [1] - 29:15
**possess** [1] - 41:14
**possessing** [1] - 34:12
**possession** [1] - 34:5
**possibilities** [3] - 18:8, 10, 21
**possible** [2] - 13:7; 24:19
**post** [1] - 15:13
**post-crime** [1] - 15:13
**posttraumatic** [1] - 33:15
**practiced** [1] - 26:2
**practitioners** [2] - 21:11; 30:19
**pray** [4] - 18:13, 15-16; 29:20
**praying** [1] - 18:17
**premeditated** [4] - 11:11; 14:5; 17:9; 37:18
**premeditation** [1] - 12:22
**preparation** [1] - 5:18
**prepared** [4] - 5:6; 14:20; 44:14
**prescription** [4] - 41:15, 18
**presence** [1] - 31:22
**present** [3] - 24:17; 30:2, 12
**presentation** [4] - 4:8; 27:15; 33:15; 36:20
**presented** [1] - 17:13

**presentence** [4] - 5:19; 6:7; 7:6; 42:11
**presents** [1] - 35:4
**pretty** [1] - 15:15
**previously** [1] - 10:23
**prison** [5] - 21:20, 25; 26:19; 29:10, 13
**Prisons** [1] - 43:8
**privilege** [1] - 25:7
**Probation** [1] - 11:2
**probation** [10] - 14:13, 18; 34:4, 13; 37:22; 41:17, 20, 24; 42:5, 15
**problem** [2] - 33:6; 42:12
**proceed** [4] - 5:6; 6:18; 8:20
**proceeding** [1] - 10:5
**proceedings** [1] - 44:24
**PROCTOR** [3] - 9:24; 10:2; 44:1
**Proctor** [2] - 2:17; 21:13
**profoundly** [1] - 18:3
**program** [9] - 32:17; 42:3, 11, 17-19; 43:13
**programming** [1] - 22:7
**programs** [2] - 41:19; 42:14
**prohibited** [1] - 41:23
**prolix** [1] - 34:18
**promise** [2] - 29:8, 20
**promote** [2] - 35:25; 36:11
**prompt** [2] - 9:7; 37:12

**protect** [4] - 11:14; 17:6; 38:12, 25
**protection** [1] - 38:23
**proud** [2] - 29:16, 22
**provide** [6] - 11:11; 17:18; 35:25; 37:16; 39:20; 41:23
**provided** [3] - 39:6; 42:3
**provider** [2] - 41:21; 42:7
**provisions** [1] - 40:2
**PSR** [2] - 7:20; 8:25
**psychiatric** [1] - 14:21
**psychologist** [2] - 33:12
**psychosocial** [1] - 33:11
**public** [5] - 11:14; 17:6; 34:16; 38:2, 12, 19-20, 23, 25
**pull** [2] - 18:7, 15
**punish** [1] - 20:9
**punished** [1] - 19:20
**punishment** [6] - 11:12; 19:21; 32:4; 36:1, 17; 37:17
**purchased** [1] - 17:3
**purposes** [1] - 40:17
**pursuant** [2] - 5:22; 9:3
**put** [4] - 20:21; 22:5; 27:2
**puzzle** [1] - 4:19

**Q**

**questions** [3] - 6:20; 27:11, 16
**quick** [1] - 15:2
**quite** [2] - 26:2; 41:12

**R**

**racketeering** [2] - 23:15; 24:12
**raise** [1] - 44:8
**raised** [1] - 31:8
**raises** [1] - 38:23
**range** [7] - 9:16; 11:8; 15:8; 31:18; 40:4, 6
**Rashaud** [1] - 23:13
**rate** [1] - 38:8
**rates** [1] - 38:11
**rather** [4] - 8:3; 9:24; 30:21; 35:11
**RDAP** [1] - 22:8
**reaches** [1] - 14:25
**read** [6] - 3:11; 6:7, 11; 39:6; 41:4, 11
**readiness** [1] - 42:20
**reading** [2] - 36:3; 40:23
**ready** [1] - 6:17
**real** [3] - 19:12; 20:7; 32:22
**realize** [2] - 23:25; 43:22
**really** [10] - 10:15; 18:2; 21:9; 25:5; 26:1; 31:6, 24; 33:7; 37:3; 43:22
**reason** [2] - 13:10; 24:19
**reasonable** [5] - 19:24; 20:11; 36:22; 37:11; 39:8
**reasons** [2] - 17:10; 44:15
**received** [2] - 6:13; 31:17
**recently** [1] - 22:5
**recidivate** [1] - 38:8
**recidivism** [1]

- 38:11
**recitation** [1] -
33:23
**recite** [2] -
30:21; 33:5
**reciting** [1] -
4:17
**reckless** [1] -
35:18
**recognition** [2]
- 9:7; 20:6
**recognize** [2] -
25:8; 38:8
**recollection**
[1] - 3:21
**recommend**
[1] - 43:11
**recommenda**
**tion** [4] -
11:6; 18;
14:4; 43:17
**reconciling** [1]
- 36:10
**record** [9] -
6:5; 9:22;
34:18; 38:15;
40:23, 25;
41:4, 8, 12
**records** [1] -
39:3
**recovered** [4] -
13:21, 24;
34:7
**reduce** [1] -
22:7
**reduction** [2] -
9:4, 7
**reference** [1] -
3:13
**referred** [1] -
33:1
**referring** [1] -
32:23
**refers** [1] -
14:18
**reflect** [2] -
11:10; 37:15
**reflects** [1] -
14:3
**regarding** [2] -
14:1, 6
**regardless** [1]
- 33:23
**regret** [1] -
15:12
**regular** [1] -
32:3
**regulations** [1]
- 42:18
**reiterate** [1] -

23:25
**related** [1] -
35:9
**relationship**
[1] - 12:7
**relay** [2] -
40:23; 41:7
**release** [5] -
5:22; 40:6,
19; 41:11, 25
**released** [2] -
29:12; 38:10
**relevant** [1] -
33:20
**remain** [1] -
43:21
**remains** [1] -
33:25
**remanded** [1] -
44:16
**remarks** [1] -
3:9
**remorse** [2] -
26:25; 37:13
**remove** [2] -
2:5
**repeat** [1] -
11:21
**replies** [3] -
16:3, 5
**Report** [1] -
7:7
**report** [12] -
5:19; 6:8, 10;
7:23; 14:20,
22; 32:24;
33:13; 37:2;
38:10; 39:22;
42:11
**reported** [2] -
31:12; 33:8
**reports** [2] -
31:8; 34:3
**represent** [1] -
21:14
**representatio**
**n** [3] - 26:23;
41:5; 42:11
**request** [1] -
36:21
**requested** [4] -
35:11; 39:8;
41:23
**requests** [1] -
43:7
**require** [2] -
41:3; 42:9
**required** [6] -
20:13; 30:19;
41:20; 42:13;

43:2
**requirements**
[1] - 33:13
**requiring** [1] -
20:10
**residential** [3]
- 34:21;
43:13
**respect** [20] -
4:18; 8:23;
9:13; 10:14;
23:11; 31:1;
33:22; 34:17;
35:24; 36:11,
21; 37:21;
38:12; 39:2,
20; 40:5, 15;
41:20; 43:22
**respects** [1] -
21:3
**responds** [3] -
16:4; 39:13
**response** [1] -
20:8
**responsibiliti**
**es** [1] - 18:10
**responsibility**
[7] - 9:5;
21:9, 15;
25:24; 26:9;
27:2; 37:12
**responsible**
[4] - 23:17;
34:25; 42:6
**rest** [6] -
18:18; 19:19;
28:16, 22;
29:4
**restitution** [9]
- 3:14, 16;
4:1; 8:15, 17;
10:17; 40:12;
42:23
**result** [2] -
11:4; 32:25
**resulted** [1] -
34:1
**resulting** [2] -
5:17; 10:25
**reviewed** [2] -
6:4; 14:20
**RICO** [4] -
23:21; 24:3,
24; 39:14
**RICO-based**
[1] - 39:14
**rights** [3] -
27:22; 43:21
**rip** [1] - 24:14
**rise** [2] - 27:19;

44:23
**risk** [2] - 15:2;
22:16
**role** [4] -
20:18; 24:25;
28:9; 37:5
**rooted** [1] -
25:19
**Ross** [26] - 6:7;
11:1, 25;
12:20, 23,
25; 13:4,
10-11;
15:10, 18;
16:18,
20-21, 25;
17:3, 25;
21:18; 26:16;
29:20; 34:21,
23-24;
37:19, 22;
38:14
**Ross's** [11] -
3:8; 16:12;
17:16; 19:9;
28:5, 20;
30:14, 22;
35:7, 20
**round** [1] -
30:6
**ruined** [1] -
24:21
**rules** [1] -
42:18
**run** [1] - 9:1

---

## S

**sadness** [1] -
18:9
**safety** [5] -
25:25; 26:10;
34:16; 35:19;
38:19
**sale** [1] - 16:2
**salient** [1] -
36:19
**satisfaction**
[1] - 7:13
**satisfied** [3] -
10:14; 41:4,
6
**saved** [1] -
15:19
**saw** [1] - 22:22
**scene** [1] -
13:14
**scheduled** [1]
- 5:19
**school** [4] -

22:23; 23:6;
31:22; 32:15
**schools** [2] -
23:5; 31:20
**science** [3] -
20:23; 25:13,
20
**scope** [1] -
42:8
**seal** [1] - 9:22
**seat** [5] - 2:3;
5:12; 7:2;
30:1; 44:13
**seated** [1] - 7:3
**second** [2] -
14:23; 20:21
**see** [4] - 15:12;
16:2; 21:23;
25:3
**seeing** [1] -
28:8
**seeking** [5] -
4:3; 8:16;
10:18; 40:12;
42:25
**seem** [1] -
39:21
**seized** [2] -
14:8; 34:9
**self** [2] - 15:5;
16:16
**self-esteem**
[2] - 15:5;
16:16
**selling** [2] -
14:10; 15:13
**sense** [1] -
6:21
**senseless** [1] -
19:18
**sensitive** [1] -
25:11
**sent** [2] - 13:3;
15:19
**sentence** [24] -
8:7, 11; 11:7;
14:2, 4; 15:7;
17:10; 19:25;
20:11, 14;
27:10; 33:20;
35:11; 36:21;
37:10, 14;
39:2, 8;
40:16; 43:15,
24; 44:2
**sentences** [2]
- 19:23; 39:9
**sentencing**
[19] - 2:11;
5:19; 6:12;

8:20; 10:5;
11:9, 15, 17,
22; 12:15;
13:18; 15:17,
22; 16:22;
17:12; 20:2,
4; 21:5;
27:12
**Sentencing** [2]
- 38:10;
39:25
**serious** [2] -
21:12; 36:2
**seriousness**
[4] - 11:10;
14:3; 35:24;
37:16
**serve** [1] - 22:9
**served** [1] -
34:12
**services** [2] -
32:17; 42:17
**serving** [1] -
43:14
**set** [5] - 30:16;
35:12; 40:9,
22, 25
**seven** [3] -
31:5, 20;
34:5
**several** [1] -
44:7
**severe** [1] -
32:1
**shall** [1] -
40:12
**share** [1] -
19:10
**shared** [1] -
42:1
**Sherice** [3] -
3:8; 12:8;
17:17
**shock** [1] -
23:2
**shooter** [2] -
13:8, 13;
17:4
**shooters** [1] -
17:1
**shooting** [1] -
32:10
**short** [3] -
21:16; 28:17;
35:5
**shot** [6] -
13:11; 32:5,
12; 34:24;
37:23
**shots** [2] -

35:1, 20
**show** [1] -
16:10
**showed** [1] -
12:17
**shows** [4] -
15:10; 18:15;
21:9
**side** [2] - 18:6;
27:8
**sidebar** [2] -
2:21; 5:1
**sides** [2] -
26:24; 39:16
**sidewalk** [2] -
12:4, 11
**sign** [1] - 42:25
**significance**
[1] - 17:15
**significant** [3]
- 8:3; 25:21;
39:16
**Silver** [1] -
32:17
**similar** [3] -
21:1; 39:3,
13
**simply** [3] -
21:6; 23:11;
36:1
**sister** [2] -
18:4; 32:11
**situation** [1] -
25:23
**situations** [1] -
39:13
**six** [3] - 9:14;
13:12; 34:24
**skills** [1] -
42:20
**smack** [1] -
20:24
**Smith** [5] -
2:17; 13:24;
16:5, 7-8;
21:14
**smoking** [1] -
33:5
**snitch** [1] -
34:24
**society** [1] -
20:9
**solicitor** [1] -
13:6
**someone** [3] -
4:21; 15:19;
26:11
**somewhere**
[1] - 8:11
**son** [10] -

17:24; 18:7,
15, 22; 22:2,
11; 27:6;
29:13, 22
**soon** [1] - 13:6
**sorry** [5] -
2:15; 18:14;
23:18; 28:4;
29:1
**sort** [3] - 2:25;
30:6; 40:1
**sound** [1] -
30:21
**speaking** [1] -
31:9
**speaks** [1] -
24:19
**special** [2] -
10:12; 43:1
**specifically** [2]
- 11:10;
19:14
**spend** [2] -
21:25; 25:6
**spent** [2] -
23:8; 25:4
**spotted** [1] -
16:25
**stability** [2] -
23:5
**stable** [3] -
20:18; 37:5,
7
**stage** [1] - 27:1
**stand** [2] -
6:18; 44:1
**standard** [3] -
40:21, 24;
41:8
**standing** [6] -
2:16; 12:4,
11; 27:5;
40:22; 43:20
**stands** [1] -
44:23
**star** [1] - 36:17
**stark** [3] -
21:10; 23:24;
24:10
**started** [1] -
12:25
**State** [1] - 5:23
**state** [3] - 6:24;
32:17; 37:24
**statement** [4] -
3:9; 12:9;
17:18; 44:15
**states** [1] -
14:22
**States** [1] - 2:9

**statistic** [1] -
28:18
**statute** [2] -
5:22; 24:12
**statutory** [2] -
30:17; 43:25
**stay** [1] - 7:3
**staying** [1] -
12:18
**step** [4] -
17:18, 20;
24:2; 29:7
**stepfather** [1] -
32:13
**still** [5] - 7:17;
21:10; 25:2,
12; 43:21
**stop** [1] -
13:23
**store** [1] - 17:2
**street** [1] -
32:14
**stress** [3] -
25:25; 31:7;
33:16
**stringfellow's**
[1] - 30:10
**stuff** [2] - 3:6;
33:8
**stupidest** [1] -
24:19
**style** [2] - 14:5;
35:21
**subjected** [1] -
32:3
**submission**
[1] - 32:23
**submissions**
[2] - 27:12;
30:9
**submit** [5] -
3:10; 19:3;
20:2, 14;
41:22
**submitted** [7] -
3:12; 7:22;
21:6; 27:17;
30:8; 39:22;
43:1
**substance** [7]
- 31:14;
33:6; 39:23;
41:19,
22-23; 42:4
**substances**
[1] - 41:14
**suffer** [4] -
21:20; 26:18;
28:24
**suffered** [1] -

21:19; 28:23;
37:1
**suffering** [7] -
16:16; 19:22;
20:13; 21:20,
22; 28:21;
37:4
**suffers** [1] -
33:1
**sufficient** [5] -
11:8; 17:11;
19:22; 20:1;
40:16
**suggest** [2] -
26:14; 36:15
**supervised** [6]
- 5:21; 34:4,
13; 40:6, 19;
41:11
**supplement**
[1] - 6:9
**supplemental**
[1] - 23:14
**support** [7] -
6:10; 15:5;
18:2; 22:15;
27:4, 9;
30:23
**suppose** [1] -
7:23
**supposed** [1] -
40:1
**Supreme** [1] -
25:18
**surrounding**
[1] - 38:5
**suspect** [2] -
13:14; 38:13
**suspected** [1]
- 34:23
**sustained** [1] -
37:3
**swapping** [1] -
15:14
**sworn** [2] -
6:19, 23
**system** [5] -
20:8; 21:24;
25:17; 28:19

### T

**talks** [1] - 24:8
**tardiness** [1] -
31:23
**TAYLOR** [1] -
17:24
**Taylor** [10] -
3:8, 15; 4:6;
12:8; 17:18,

23; 19:1;
30:12; 37:18;
40:13
**teach** [3] -
25:8; 29:11,
13
**teenager** [2] -
21:23, 25
**ten** [1] - 25:13
**term** [3] - 8:3;
40:6; 42:8
**terms** [4] -
2:23; 3:6, 13;
43:8
**terrible** [2] -
25:22; 26:20
**test** [1] - 32:19
**testing** [1] -
41:22
**text** [7] - 13:3;
15:16,
20-21; 36:14
**texted** [2] -
13:16
**THE** [73] - 2:3,
13, 18, 22;
3:5, 11, 18,
22, 25; 4:4,
7, 11, 14, 17,
22, 25; 5:2,
6, 9, 11; 6:3,
17, 22,
24-25; 7:1,
4-5, 8-9,
11-12,
14-15, 19,
22; 8:1, 10,
14, 19, 23;
9:10, 21;
10:1, 3, 8,
11; 11:24;
17:22; 19:1,
4, 7; 27:15,
19; 28:2-4;
29:25; 30:4,
6; 32:20;
41:3, 7; 43:7,
18, 20;
44:11, 19,
21, 23
**Thomas** [114] -
2:10, 16, 19,
23; 3:1, 13;
5:23; 6:6, 11,
18, 25; 7:2,
22; 8:6; 9:3,
13-14;
10:14, 22;
11:3; 12:14,
16, 19; 13:3,

8, 13, 16;
15:4, 11;
16:1, 3, 5-7,
9; 17:4;
19:13, 20;
20:17; 21:3,
19, 23; 22:6,
21; 23:2,
16-17, 24;
24:3, 6, 9;
25:1, 5; 26:6,
13, 23;
27:13,
19-20;
29:25; 30:11,
23; 31:2, 7,
10, 14, 18,
25; 32:3,
6-8, 10, 13,
15, 19, 25;
33:1, 3-4, 7,
10, 13, 25;
34:4, 7, 20,
22, 25;
35:22; 36:3,
23; 37:3, 11,
21; 38:15,
18; 39:20;
40:19; 41:1,
9; 42:9, 21;
43:15, 21;
44:1, 13, 16
**Thomas's** [29]
- 4:18; 9:8;
13:2, 15;
14:7; 20:6;
21:7; 22:14;
25:11; 26:8;
31:3, 21, 24;
32:5, 11;
33:19, 24;
34:9, 11;
35:5; 36:22;
37:2, 6, 16,
24; 38:2, 21;
39:10
**thorough** [1] -
39:17
**thoughts** [1] -
33:2
**threat** [2] -
37:24; 38:19
**threatened** [2]
- 15:2; 16:14
**three** [6] -
21:1, 21;
23:17; 31:9;
40:19
**thrilled** [1] -
14:17

**throughout** [3]
- 26:25;
27:7; 31:24
**today** [7] -
5:19; 19:13;
27:12; 28:8;
31:19; 36:17;
44:10
**tomorrow** [1] -
44:4
**took** [2] - 24:5;
37:11
**total** [2] - 11:4;
40:3
**tough** [1] -
39:4
**trade** [2] -
15:25; 16:4
**trades** [1] -
29:18
**trading** [3] -
14:10; 15:14,
24
**trafficking** [1] -
35:10
**tragedies** [1] -
25:2
**tragedy** [6] -
19:12; 25:9;
26:17,
24-25; 28:9
**training** [2] -
39:21; 42:20
**trauma** [1] -
33:1
**traumatic** [2] -
20:17; 36:25
**traveling** [1] -
12:17
**treatment** [11]
- 22:8;
31:17; 39:21,
23-24;
41:19; 42:2,
4, 7, 10;
43:14
**tremendous**
[1] - 28:5
**trial** [1] - 21:11
**trigger** [2] -
18:7, 15
**troubling** [1] -
36:14
**true** [2] -
26:25; 34:2
**truly** [2] - 28:4,
25
**try** [1] - 29:8
**trying** [2] -
13:5; 16:2

**tryna'** [1] -
16:4
**turn** [1] - 18:13
**two** [13] - 9:4;
12:13; 13:9,
12, 14; 17:4;
22:11; 24:25;
31:6; 32:7;
40:7
**two-level** [1] -
9:4
**two-year-old**
[2] - 22:11;
31:6
**type** [4] -
14:12; 17:7;
22:24
**typical** [1] -
32:3
**typically** [1] -
2:25

### U

**U.S.C** [4] -
5:17; 11:18;
30:17; 40:17
**Uber** [1] - 17:3
**ultimate** [2] -
38:21; 40:15
**ultimately** [2] -
33:18; 38:23
**uncle** [2] -
18:11; 24:24
**uncles** [1] -
27:6
**understood**
[1] - 25:23
**uneditorialize
d** [1] - 35:1
**unique** [1] -
39:10
**United** [1] - 2:9
**unless** [1] -
40:24
**unwarranted**
[1] - 39:2
**up** [13] - 5:22;
6:5; 17:20;
21:23; 23:1;
24:2, 24;
25:1, 7; 31:7;
44:1
**upbringing** [2]
- 26:14;
36:25
**US** [3] - 11:2;
38:10; 42:1
**usage** [1] -
15:4

01/11/2023  Sentencing

## V

vaccinated [2] - 2:4
valid [2] - 41:15
vehicle [3] - 13:14, 23; 17:1
verbatim [1] - 40:24
versus [1] - 2:9
via [1] - 13:3
victim [12] - 2:23; 3:6, 8, 12; 4:9; 6:12; 12:9; 17:18; 26:15; 38:4, 14
victim's [1] - 42:24
violation [1] - 5:17
violence [13] - 5:16; 10:25; 20:20; 22:20, 24; 24:13; 32:1, 14; 36:16; 37:5; 38:15
violent [3] - 14:12; 38:8, 11
Virginia [1] - 29:17
virtually [1] - 22:16
virus [1] - 32:8
vocational [1] - 42:17
voluntary [1] - 7:24

## W

wait [3] - 4:9; 12:22; 26:8
waived [1] - 44:7
Walgreens [1] - 17:2
wants [2] - 13:6; 27:14
wash [1] - 13:17
wave [1] - 15:11
ways [1] - 22:15

weapon [2] - 13:20, 24
weapons [3] - 12:13; 13:11, 22
weeks [1] - 15:18
welcome [1] - 7:3
Wesson [4] - 13:25; 16:5, 7
West [1] - 29:17
whole [1] - 12:5
wife [1] - 32:11
willing [1] - 14:11
willingness [1] - 38:21
window [1] - 22:23
wiped [1] - 18:12
wish [5] - 19:5; 28:1, 15; 44:10
wishes [1] - 4:14
witnessed [3] - 22:21; 32:8, 10
wonderful [1] - 12:7
words [2] - 17:14; 29:2
world [1] - 18:21
worse [1] - 28:10
write [1] - 18:4
writes [2] - 16:1, 10
writing [1] - 44:5
wrote [1] - 13:5

## Y

year [3] - 3:16; 22:11; 31:6
years [21] - 5:22; 8:8; 11:3, 6, 19, 25; 12:6; 14:4; 20:3, 15; 21:20; 23:12, 23;

25:13; 27:9; 37:15; 40:7, 18
York [1] - 26:3
young [15] - 19:18; 20:25; 21:12; 22:2, 17, 21; 23:3; 24:18; 25:18; 26:11; 28:18; 31:3, 24; 35:5; 43:14
yourself [1] - 18:20
yourselves [1] - 2:3