IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **UNDER SEAL** |
| v. | * | |
| | * | **Criminal No. JRR-21-0494** |
| **JOURDAIN LAROSE,** | * | |
| | * | |
| a.k.a. JBlacc, | * | |
| | * | |
| Defendant. | * | |

*******

## GOVERNMENT'S SENTENCING MEMORANDUM

A brief conversation set this murder in motion. Jourdain Larose wanted Juan Ross dead and he was willing to pay to get it done. Larose has pled guilty to one count of use and discharge of a firearm during a crime of violence resulting in death in violation of 18 U.S.C. § 924(j). The government respectfully submits that a sentence of 480 months (40 years) is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553, namely, (1) the nature and circumstances of the offense, which involved a premeditated murder; (2) the need to avoid unwarranted disparities in sentencing; (3) the need to promote respect for the law and provide just punishment for a crime that has shattered a family (4) the need to afford adequate deterrence to criminal conduct that has devastated a community; and (5) the need to protect the public from further crimes of the defendant. Larose will appear before the Court for sentencing on February 27, 2024.

## UNITED STATES SENTENCING GUIDELINES CALCULATION

The Presentence Investigation Report indicates that the base offense level for the offense is 43 pursuant to USSG §2A1.1 because the offense was first degree murder. Larose receives a two-level reduction for his acceptance of responsibility under USSG §3E1.1(a). The government will move for a third level reduction at the time of sentencing which establishes an

1

adjusted offense level of 40.  Larose is a career offender, so his criminal history category is VI.  The advisory guidelines range is 360 months to Life.  The government's recommended sentence is within the guidelines range.

The Sentencing Guidelines provide that in the case of a premeditated killing like this one, life imprisonment is the appropriate sentence if a sentence of death is not imposed, and that a downward departure is not appropriate.  U.S.S.G. § 2A1.1, Application Note 2(A).  The government takes into consideration the defendant's early acceptance of responsibility in reaching its recommended sentence of 40 years.

## FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

### I. Nature and Circumstances of the Offenses

Larose admits in his plea agreement that he solicited others and conspired with others to kill Juan Ross because he thought Ross cooperated with law enforcement.  Larose and Ross knew each other from Columbia, Maryland and had friends in common.  They both were involved in trafficking drugs (although not together) and they both were involved with the possession of firearms.  As such, it caught Larose's attention when Ross was arrested but not prosecuted, leading Larose to send Ross texts such as, "I was jus letting it be known I think you keep getting locked up & getting out yea right."  Word spread among their shared associates of Ross's recent release after an arrest, and in a group chat with Larose, one of Larose's friends relayed Ross's explanation as to why his case did not appear on Maryland Judiciary Case Search:

> Bruhh then he said 12 spelled his name wrong so if you case search it it won't show lmaoooooooooo
> Status: Read
> Read: 9/10/2020 12:38(UTC-4)
>                                                                   9/10/2020 12:38(UTC-4)

Just two days later, Larose reached out to an unindicted co-conspirator about murdering Ross for payment.  Larose provided partial payment and a firearm to get the job done, corroborated by text

messages from Larose's phone to the number used by the unindicted co-conspirator in which Larose referenced the "bippy" (gun) and the "bread" (money). After providing the payment and the firearm, Larose did not just sit back and wait. Via text messages over the next few weeks, he actively encouraged and pressed the unindicted co-conspirator to act quickly:

> Ya right there
> Look for gold Jeep prolly
> Should be in front building if not just sit on it bro
> Yo was just right there bro
> Yo be to late bro I'm telling you it's going be some shit when u do get round bro
> He was jus out bro

When Ross was not murdered, Larose turned elsewhere. Tyrik Braxton went to high school in Columbia, Maryland and at the time of Ross's murder, was dealing drugs in Baltimore (separate and apart from Larose and Ross's drug activities). Braxton knew Ross and was familiar with the area where Ross frequented. When the unindicted co-conspirator got cold feet to commit the murder, Larose told him that he could enlist his "InTown pples," referring to Braxton and his associates in Baltimore City. Again, Larose urged Braxton to move quickly, "Bro I need you be on it for me,"…"I got the papers for the n*****,"…"Need yo spanked." These texts were sent from Larose the day before Ross's murder. He asked if Ross could be murdered while Larose was out of town for the weekend, presumably to distance himself from the crime.

Juan Ross was 23 years old when he was shot repeatedly in the head in the middle of the afternoon on a sidewalk in Columbia. Within minutes, his mother[1] and his girlfriend were on scene as others tried to shield them from the sight of his body. At last, the job was done for Larose.

Certainly, that this was a murder for hire is an aggravating factor that makes this murder particularly atrocious. Additionally, Larose's determination and persistence in ensuring that this murder happen highlights Larose's cold-blooded nature. Indeed, the number of shots to Ross's

---

[1] Sherice Taylor, mother of Juan Ross, intends to submit a victim impact statement to the court. The government will forward it to counsel and chambers as soon as it is received.

head are indicative of an execution style murder – there needed to be zero chance of him surviving.

## II. History and Characteristics of the Defendant

According to the Presentence Report, Larose is in good health, physically and mentally. ECF 124 at ¶ 58-61. He has no history of physical health problems. ECF 124 at ¶ 58. At the age of 28, he has little to no real employment history. ECF 124 at ¶ 67-70. His childhood was active and normal, and he was well cared for. ECF 124 at ¶ 51. His family reported that they lost family members in an earthquake in Haiti in 2010 and that Larose never received counseling or properly processed the experience. ECF 124 at ¶ 52-53. Despite his family's experience, Larose went on to have a positive childhood and neither Larose nor his mother had concerns about his mental health. ECF 124 at ¶ 54, 60, 61. Larose matured enough to have a long-term relationship that produced two children in whose lives he was very much involved. He was educated, smart, knew how to hustle, knew how to make decisions, and knew exactly what he was doing when he orchestrated the murder of Juan Ross.

Larose is a career offender. He has two prior state felony drug convictions for which he served periods of incarceration. During this investigation, Howard County police executed a search warrant at his mother's (Nadege Oladele) small 1 bedroom apartment where Larose was laying his head – 5505 Waterloo Road, Apartment 204 in Ellicott City. At the time of entry, Oladele was located sleeping on the family room floor. Officers located Larose alone in the bedroom along with multiple firearms and rounds of ammunition. To be clear, neither firearm was used in the murder of Juan Ross. These weapons were not part of the murder for hire conspiracy. Larose's cellphone was seized and its contents contained gun and drug talk.

## III. Need for Unwarranted Sentencing Disparities

Defense counsel requests a sentence of 25 years, "the high-end of the c-plea range" in the plea agreement for Tyrik Braxton.[2] The defense argues that Braxton and Larose had similar roles

---

[2] Braxton's plea agreement calls for an agreed upon range of 20-25 years. He has not yet been sentenced.

in this crime and that Ross would not have been murdered if not for Braxton. The government could not disagree more. It was Larose's ire towards Ross, his desire to see him killed that set this plan in motion, a plan that was hatched by Larose and Larose alone. Larose was willing to pay and provide the weapon. He provided the address where Ross could be found. He dictated where, how, and even when. Shooter Daquante Thomas received a sentence of 35 years for his role in this murder, committed for pecuniary gain at the behest of Larose. It would be unreasonable and unjust for Larose, the solicitor of a premediated, execution-style murder to receive a sentence lower than Thomas. The defense argues that a 40-year sentence is excessive for Larose given the government's recommendation of 25 years imprisonment for Braxton. The recommendation in Braxton's case is based in part on his much lower criminal history category (II) whereas Larose is a criminal offender. Additionally, Braxton's role and level of participation in the crime as it compares to Larose justifies a lower sentence. Braxton was not the mastermind behind this evil plan, it was Larose.

In support of the request for a 25-year sentence, the defense cites several racketeering and drug conspiracy cases in which the defendants were not charged or not convicted of a substantive murder offense. It is true that the court must consider the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). But that goal is met by calculating and considering the applicable guidelines range. *See*, *United States v. Sueiro*, 59 F.4th 132, 141 (4th Cir. 2023)(procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons of sentences imposed in cases unconnected to the case before the court.); *United States v. Friend*, 2 F.4th 369, 382–83 (4th Cir. 2021) ("Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized." (*quoting United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012)).

The defense suggests that the government's recommendation of 40 years imprisonment is an outlier for this type of crime. The below cases from this district establish otherwise:

- o    *United States v. Aaron Daniels*, 17-ELH-0191– Defendant was sentenced to 40 years after pleading guilty to § 924(j) murder of Donya Rigby, an underling in the street-level drug trafficking organization of which he was a member.

- o    *United States v. Nathaniel Hillard,* 17-ELH-0191 – Defendant was sentenced to 35 years after pleading guilty to § 924(j) murder of Donya Rigby, an underling in the street-level drug trafficking organization of which he was a member—even though he served as a "lookout" for the murder and was not the trigger-puller.

- o    *United States v. Gregory Whisonant* – Defendant was sentenced to 30 years after pleading guilty to drug trafficking conspiracy and admitting to supervising street-level drug trafficking organization of which Aaron Daniels and Nathaniel Hillard were members—even though he was not involved in the murder of Donya Rigby.

- o    *United States v. Jonathan Cornish*, 07-RDB-604 – 17-year-old shooter (15 at the time of the murder) sentenced to 40 years after pleading guilty to the murder for hire of a witness. Cornish also cooperated and testified against co-defendants. See *U.S. v. Byers*, 649 F.3d 197 (2011).

### IV. The Need for the Sentence to Reflect the Seriousness of the Offense and Provide Just Punishment

A sentence of 480 months imprisonment (40 years) reflects the seriousness of Larose's offense and provides just punishment for a defendant who paid another to commit first degree premeditated murder. The loss to Sherice Taylor is beyond words.

### V. The Need to Protect the Public and Need for Deterrence

There is a compelling need for deterrence here. Larose had already been convicted of two major felonies at the time of this offense. He is a career offender. The need to protect the public from further crimes of the defendant is paramount.

### CONCLUSION

The government believes that a sentence of 40 years of imprisonment is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: /s/
Kim Y. Hagan
Assistant United States Attorney
36 S. Charles St., Fourth Floor
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of February, 2024, a copy of the foregoing Government's Sentencing Memorandum was served via e-mail and electronically through the Clerk of the United States District Court using CM/ECF to defense counsel of record.

 /s/
Kim Y. Hagan
Assistant United States Attorney