IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | *    **UNDER SEAL** |
| v. | * |
| | *    **Criminal No. JRR-21-0494** |
| TYRIK BRAXTON, | * |
| | * |
| a.k.a. Son Son, | * |
| | * |
| Defendant. | * |

*******

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Tyrik Braxton, has pled guilty to one count of use and discharge of a firearm during a crime of violence resulting in death in violation of 18 U.S.C. 924(c) and 18 U.S.C. 924(j). The government respectfully submits that a sentence of 300 months (25 years) is necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553, namely, (1) to reflect the seriousness of the offense, which involved a premeditated murder; (2) to provide just punishment; and (3) to deter criminal activity that has a devastating impact on the community. Braxton will appear before the Court for sentencing on July 15, 2024.

## UNITED STATES SENTENCING GUIDELINES CALCULATION

The Presentence Investigation Report indicates that the base offense level for the offense is 43 pursuant to USSG §2A1.1 because the offense was first degree murder. Braxton receives a two-level reduction for his acceptance of responsibility under USSG §3E1.1(a). The government will move for a third level reduction at the time of sentencing which establishes an adjusted offense level of 40. With a criminal history category of II, the advisory guidelines range is 324 months to 405. Slightly lightly below the guidelines range, the government's recommendation is sufficient but not greater than necessary to achieve the goals of sentencing.

The Sentencing Guidelines provide that in the case of a premeditated killing like this one,

1

life imprisonment is the appropriate sentence if a sentence of death is not imposed, and that a downward departure is not appropriate. U.S.S.G. § 2A1.1, Application Note 2(A). The government takes into consideration the defendant's early acceptance of responsibility, his role in the offense and his criminal history in reaching its recommendation of 25 years.

## FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

I. **Nature and Circumstances of the Offenses**

Braxton admits in his plea agreement that he participated in a murder for hire scheme to kill Juan Ross for pecuniary gain. He conspired with others to hunt down Ross, who was suspected of being a snitch. Ross had a daily presence in the Oakland Mills neighborhood of Columbia, Maryland. On the day of the murder, Braxton drove out to Howard County with two armed co-conspirators to locate Ross. Braxton was familiar with the area and who knew how to find Ross. In fact, the day before, Braxton sent a text message to his co-conspirator that included an address in the Oakland Mills neighborhood within the Verona Apartments and stated, "Ima show u who they is." Braxton conducted a search on his cellphone for the address. Location information for the cellphones used by Braxton and one of his co-conspirators show that they drove through the Oakland Mills neighborhood, most likely spotting Ross around the Verona Apartment complex.

The men drove to a nearby Walgreen's where Braxton exited the vehicle and purchased an Uber gift card from inside of the store. Braxton awaited an Uber pick up from Walgreens while his co-conspirators drove back to the Verona Apartments to lie in wait for Ross. Ross and two other individuals were standing along the sidewalk in front of 9689 Basket Ring Road when Braxton's co-conspirators approached Ross and opened fire. The autopsy showed that Ross was shot eight times, six times to the head.

Every murder is tragic, but there are aggravating factors that make this murder particularly atrocious. First, the manner in which Braxton and his co-conspirators carried out the murder was

strikingly cold-blooded. Ross was killed in broad daylight in a bustling Columbia neighborhood with citizens milling about. Second, the number of shots to Ross's head are indicative of an execution style murder. Braxton and his co-conspirators needed to ensure that Ross did not survive and the job was complete. Lastly, Braxton and his co-conspirators committed the murder to make money. They were paid by Jourdain Larose.

Howard County police detectives traced the Uber card purchased from the Walgreen's to an account associated with Braxton. According to Uber, there were two separate Uber trips requested on the day of the murder. At 2:13 p.m., Braxton requested to be picked up at the Walgreen's and driven to 6161 Quiet Times, Columbia, Maryland, his aunt's residence. At 4:16 p.m. and well after the murder, Braxton requested to be picked up from 6161 Quiet Times and driven to Twin Rivers Road in Columbia. During the drive, Braxton changed his destination and went to Shipley's Grant Shopping Center located at the 5700 block of Richards Valley Road, Ellicott City, Maryland, where he waited for and eventually met with a female in a car. He was seen grabbing something from her bag that he then put it in his pocket. Braxton returned to Baltimore. About two hours after the murder, an individual at the crime scene sent Braxton a photo of Ross's body, surrounded by police personnel and crime scene tape. Braxton later reported to Larose that the job was complete.

On November 20, 2020 investigators executed a series of search warrants including at Braxton's apartment in Baltimore. Investigators recovered a Springfield XC .45ACP handgun with a magazine and ammunition located under the mattress in Braxton's bedroom. Although not the murder weapon, the recover of this firearm shows that like his co-defendant Thomas, Braxton had easy access to firearms. The text message exchange below is between Braxton and Thomas.



During his post arrest interview, Braxton denied knowing Thomas. They were, however, close friends and associates:



## II. History and Characteristics of the Defendant

According to the Presentence Investigation Report Braxton reported that he had a stable childhood and has a close relationship with his mother and siblings. ¶ 69. Braxton was active in sports. ¶ 70. He reported no abuse or mental health concerns growing up. *Id.* It seems that he had a relatively normal childhood surrounded by a loving family. Braxton reports that he has been in a long-term relationship and has one child. ¶ 71.

Braxton reports that he was shot in 2020 which resulted in injuries to his left leg and right ankle.[1] ¶ 74. He was also stabbed in his eye while incarcerated pre-trial in 2022.[2] ¶ 75. Braxton has not been diagnosed with any mental health conditions, and other than regular use of marijuana before his incarceration, he does not have a history of substance abuse. ¶ 76-79. For a 28 year-old high school graduate with some community college education, Braxton's employment history is meager.

There is no circumstance or event in Braxton's life that explains his participation in a murder for hire. He was not suffering from severe addiction or mental health issues. He did not have a violent or an abusive childhood. Agreeing to help kill Juan Ross was simply a choice that Braxton made of his own free will.

## III. Need for Unwarranted Sentencing Disparities

The solicitor of the murder for hire plot, Jourdain Larose, received a sentence of 40 years for his role in this heinous crime. His criminal history category was VI. The shooter Daquante Thomas received a sentence of 35 years for his role. Thomas' criminal history category was III. Braxton is a criminal history category II. The government's recommendation of 25 years imprisonment is reasonable and appropriate considering his role and circumstances in relation to his co-defendants.

---

[1] As a result, Braxton walks with a limp, an observation made by one of the Uber drivers on the day of the murder.
[2] The assailant was not associated with this case. The government does not believe that the assault was in any way related to this case.

Braxton was not the mastermind behind this evil plan, but in exchange for payment, he led his co-conspirators to Juan Ross knowing that they intended to kill him.

**IV. The Need for the Sentence to Reflect the Seriousness of the Offense and Provide Just Punishment**

Victim impact statements were previously submitted to the court and incorporated into the final Presentence Report. The victim's mother, Sherice Taylor, will most likely address the court at sentencing hearing. She has shown extraordinary forgiveness toward the men who took her son away. A sentence of 300 months imprisonment (25 years) reflects the seriousness of Braxton's offense and provides just punishment for a defendant who actively participated in the planning and execution of a murderous plot.

**V. The Need to Protect the Public and Need for Deterrence**

There is a compelling need for deterrence here. This was a murder for hire conspiracy that shattered a family and a community. Juan Ross was shot repeatedly in a quaint Columbia neighborhood as he stood with friends on the sidewalk in the middle of the afternoon. The need to protect the public from further crimes of the defendant is paramount.

**CONCLUSION**

The government believes that a sentence of 25 years of imprisonment is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:   /s/
Kim Y. Hagan
Assistant United States Attorney
36 S. Charles St., Fourth Floor
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of July, 2024, a copy of the foregoing Government's Sentencing Memorandum was served via e-mail and electronically through the Clerk of the United States District Court using CM/ECF to defense counsel of record.

/s/
Kim Y. Hagan
Assistant United States Attorney